Eva NUMER et al., Respondents,

v.

KANSAS CITY, Missouri, and Sam Eddy and Louise Eddy, Appellants.

No. 23607.

Kansas City Court of Appeals.

Missouri.

Feb. 4, 1963.

James Daleo, Norman E. Greene, Kansas City, for appellants Sam and Louise Eddy.

Keith Wilson, Jr., Guy W. Rice, Sherwin L. Epstein, Kansas City, for appellant Kansas City.

Solbert M. Wasserstrom, Mendel Small, Kansas City, for respondents.

DEW, Special Commissioner.

Respondents brought this action for a judgment declaring null and void Ordinance No. 25574, passed by the council of appellant Kansas City, Missouri, by the terms of which a certain tract of real estate belonging to appellants Sam and Louise Eddy would be reclassified under the basic zoning ordinance of Kansas City from "R–5, High Apartments" to "C–2, Local Retail Business"; to enjoin such owners from making any use of such property other than prescribed for its present classification R–5, and to enjoin appellant City and its agencies from granting any permit to do so. The trial court decreed the said amending ordinance No. 25574 to be invalid and granted the orders of injunction as prayed. From that judgment appellants have appealed.

The property in question is located on the southwest corner of Armour Boulevard and The Paseo, both of which are boulevards long since established as such in Kansas City, Missouri. Armour Boulevard runs east and west, beginning at Broadway, nearly a mile and a quarter west of the property referred to, and dead-ending at The Paseo, where that property is located, from which point Armour continues east as a narrow street designated as 35th Street. The Paseo starts at the extreme north end of Kansas City and follows almost a straight course south through the city for 18½ miles. The tract involved in this proceeding fronts 150 feet on the west side of The Paseo and 156.83 feet on the south side of Armour Boulevard. Situated on the property is a large three-story residence building, vacant at the time of the hearing in the circuit court and for some time prior thereto.

The parties stipulated as to many of the facts of the case, many of which are also matters in the nature of documentary evidence. Such agreed facts as are deemed material will be stated. The original zoning ordinance of Kansas City was enacted in June, 1923. Thereunder all four corners of the intersection of Armour Boulevard and The Paseo were zoned "U–2 Apartments", with certain regulations prescribed. The lots adjoining those corner properties on each boulevard were also zoned "U–2 Apartments", with somewhat lesser requirements. In 1951, there was a general amendment of the basic zoning ordinance of the city and its amendments, and the former district designations were changed, as "U", "H", and "A", to R and C and others, followed by numbers, denoting various forms of such classified uses. The general classification "R" indicated residential and related uses and "C" denoted retail and intermediate business uses in various associated forms.

According to a zoning map in evidence, furnished by the office of the City Plan Commission, the accuracy of which is admitted, all four corners of the intersection of Armour Boulevard and The Paseo were zoned "R–5 High Apartments" in 1951 when the basic zoning regulations of the city were revised. Except only at or near its intersections with Troost Avenue, Warwick Boulevard, Main Street and Broadway, mostly business thoroughfares of long standing at such points, Armour Boulevard is entirely zoned R–5 on both sides from The Paseo to its beginning at Broadway, a distance of over a mile. The Paseo, north of the Eddy tract to near 31st Street, some 2600 feet, was zoned "R–5, High Apartments", on both sides, and south to near 45th Street, more than a mile, was entirely zoned "R–4 Low Apartments", on both sides, except three corners zoned "C–1 Neighborhood Retail Business", at 39th Street, 44th Street and 45th Street. The Faxon School is located on the west side of The Paseo at 37th Street. The areas adjoining the frontage lots on Armour and The Paseo in all

directions for several blocks from the Eddy property were predominantly zoned R–2 to R–5. The shortest distance from the Eddy tract to property zoned for business is west to the corner of Armour Boulevard and Troost Avenue (a business cross-thorough-fare), a distance of about 900 feet. The next nearest lot so zoned is at 35th Street and Woodland, more than a quarter of a mile east of the Eddy tract. Thus there was no property contiguous to the Eddy property that was zoned for business, and none in any direction therefrom closer than at Troost Avenue, about three city blocks.

In March, 1960, Sam and Louise Eddy acquired the property in question. In October of that year Ordinance No. 25574 was introduced in the City Council, the sole subject of which was the rezoning of that property from "R–5 High Apartments" to "C–2, Local Retail Business". The admitted purpose of the ordinance was to authorize the erection of a gasoline filling station at the site. A prior application by the Eddys directly to the City Plan Commission for such rezoning was, upon opposition, withdrawn.

As required by statute the ordinance was referred to the City Plan Commission for recommendation and on November 28, 1960, after a hearing on the same, the Commission unanimously recommended a denial of the proposed ordinance, stating in part:

"The Commission believes this proposed amendment is 'spot' zoning and it should be noted that the ordinance is approved by the legal department 'as to form only'.

"The amendment represents no comprehensive zoning plan which is the essential basis for zoning and is contrary to a basic premise of keeping the boulevard system free from commercial encroachment except where precedent for commercial uses have long been established, usually where major commercial streets intersect the boulevard system. A commercial area does lie

four blocks to the west at Armour and Troost".

Notwithstanding the above adverse recommendation by the City Plan Commission, the city council passed the ordinance by a divided vote on December 9, 1960. The Board of Park Commissioners, which supervises the park and boulevard systems of Kansas City, had voted unanimously against the proposed change when first proposed, and upon the passing of the ordinance adopted a resolution on December 14, 1960, characterizing the ordinance as "spot" zoning, which would expose the boulevard system to further encroachment of retail business and cause a deterioration of values of abutting properties. The resolution sought a reconsideration of the ordinance. A request was thereupon made by the Mayor to the Council for a reconsideration. Also the City Plan Commission adopted a resolution criticizing the ordinance as in violation of the spirit, integrity and intent of the basic zoning laws of the city, pointing out that the major traffic-ways zoned for business met the needs for retail business within the community, and that the rezoning of the southwest corner of Armour Boulevard and The Paseo violates the principles of the zoning system and "represents no comprehensive plan or policy toward the development of the city or its boulevard system".

When the ordinance was submitted to the City Counsellor's office for approval "as to form and legality", that office deleted the words "and legality" and approved only "as to form". On February 17, 1961, the council again, on a divided vote, adopted the ordinance.

Admitted by the stipulation in this case was a survey made in 1956, at the intersection in question in dry, fair weather between the hours of 6:30 to 10:30 a. m. and from 2:30 to 6:30 p. m., which showed that of 3,723 automobiles eastbound on Armour Boulevard, 1,367 made left turns at the intersection with The Paseo, 619 made right turns there and 737 proceeded eastward on

35th Street; and of 6,980 cars approaching from the north on The Paseo, 5,821 proceeded straight south in front of the Eddy property. It was admitted that at the time of the trial the Eddys had pending an application for a permit to erect a gasoline filling station on their property.

Some of the foregoing stipulated facts were also pleaded in the petition. Additional facts were alleged. It is averred that the respondents (plaintiffs) each owned a lot or lots adjacent to or in the vicinity of the Eddy tract; that each of their properties is zoned and used for residential purposes except a tract being used for religious and educational purposes (Congregation Beth Salom) at 3400 The Paseo and a nursing home; that such owners have improved their property in reliance upon the existing zoning restrictions of the city in effect since 1923; that appellants Eddy at the time they acquired their tract at the southwest corner of Armour Boulevard and The Paseo knew it was zoned "R–5 High Apartments", and that it had been similarly so classified since 1923, and that all of the property in the vicinity was zoned either R–5 or under more restricted classification.

The petition further alleged that the ordinance does not have for its purposes any of the objectives prescribed by Sections 89.020 and 89.040 RSMo 1959, V.A.M.S.; that it is not uniform throughout the district, as required; that it ignores the comprehensive zoning plan in effect in Kansas City since 1923; violates the integrity of the boulevard system of the city, and was designed for the sole benefit of the appellants Eddy with no regard for the owners in the general community; that it increases congestion of the streets, endangers pedestrian and vehicular traffic; increases danger from fires and panic, would permit obnoxious fumes from automobiles, would cause glaring lights and noise from the business activity, would create a hazard to school children in the neighborhood and is arbitrary, unreasonable and discriminatory; that respondents have no adequate remedy at law.

In response to a request for pretrial admissions, appellants Eddy admitted that when they acquired the southwest corner property at Armour Boulevard and The Paseo they knew that it was then zoned R–5; that they knew that under such classification it could not be used for a gasoline filling station, and that all of the neighborhood immediately adjoining the above intersection was zoned in 1923 in residential classification; and that the northwest corner was also vacant but would still be zoned for R–5 uses only. They denied that their property would be suitable for uses prescribed under R–5 or conditionally permissible thereunder, such as a high apartment, a garden-type apartment, an apartment hotel, a clinic for use of doctors or dentists, a convalescent or old folks' home or for an office building; they denied that their property was undistinguishable from other properties in the vicinity as to classification; denied that the character of the neighborhood had remained materially unchanged since 1923; and denied that a filling station on their tract would adversely affect the values of surrounding properties.

Appellant Kansas City, in effect, similarly answered pretrial interrogatories. Thereafter their respective answers to the petition were filed in which they denied the controversial allegations of the petition. Upon the application of appellants Eddy the case was transferred to Division 12 of the Circuit Court at Independence.

In behalf of the respondents there was substantial testimony and documentary evidence that the proposed change of the zoning of the Eddy property from R–5 to C–2 would depart from the comprehensive plan of the city's boulevard system and would greatly impair it and would inure solely to the benefit of appellants Eddy. There was testimony that a filling station would create a traffic hazard; that it would depreciate the values of other properties in the vicinity and would cause other owners in the vicinity to demand a similar change in their zoning from residential to business uses, because of the lights, noise and business ac-

tivity on the Eddy lots. There was testimony that there had been no substantial change in the community sufficient to justify the ordinance, and that the Eddy property could be used profitably under R–5 for conditional purposes other than as a residence.

Many witnesses for respondents testified as to one or more of the foregoing issues. They included the president of the Board of Park Commissioners of Kansas City, which supervises the boulevard and park systems of the city; the chairman of the City Plan Commission, to which are referred proposed changes in zoning classifications for recommendations; prominent real estate owners and operators, experienced in the management, sale and financing of apartments and similar projects; owners of lots in the vicinity of Armour Boulevard and The Paseo, including properties used for educational, religious and residential purposes.

There was much evidence in behalf of the appellants of the effect of the war or racial integration or shifting of population from the north end of The Paseo towards the south; that there had been material change in the vicinity from single-family residences to multi-family homes, apartments and boarding houses; that many residences in the neighborhood had been repossessed; that a few high apartments and office buildings had been erected in the area at Gillham Road and at Main Street, although attractive; that it would not be feasible to erect an apartment on the Eddy lots because of the type of clientele that would be attracted to it and which could not afford the rental rates desirable. It was testified that a filling station could be financed, would not depreciate the values of other properties in the neighborhood, would accommodate the property owners nearby, and would be a great improvement over the vacant residence now located on the site. It was stated that a filling station would not create a congestion of traffic, but would facilitate traffic because it would afford a clear view of approaching cars; that no records show any fatal injuries to children

at filling station driveways; that only in the sense that the Eddy property is isolated would the change be "spot zoning", although it would have been better to have made the change on Armour Boulevard to extend to Troost Avenue. A witness conceded that if the Eddy property is reclassified to C–2, the Eddys could change their minds and, under the provisions of that classification, could erect thereon a tavern, if liquor laws were met, or a pool hall, cocktail lounge, a dance hall, cleaning and dyeing establishment, public garage, laundry, tire and battery shop, transfer and storage business, or used car lots, some of which uses required approval of the Board of Adjustment.

Among the witnesses testifying for the appellants to one or more of the enumerated points, were an owner of a 24-unit apartment at 3717 The Paseo, who was an experienced real estate operator, former Chief Building Inspector of Kansas City, former Acting Building Commissioner, and a graduate consultant in planning and construction, presently engaged under contract with developers of apartment projects, a teacher and practitioner of architecture; also a commanding officer of the Safety Education Unit of Kansas City; a graduate traffic engineer, and others.

The trial court found that some changes in the use of property in the neighborhood of the Eddy tract had been shown, particularly along The Paseo, "but the changes in the use of such properties made since the enactment of the original zoning ordinance and the amendments thereto do not support, justify or authorize the enactment of Ordinance No. 25574"; that the ordinance is "contrary to the terms and provisions of R.S.Mo., Chapter 89, particularly Sections 89.020 and 89.040 thereof, in that the ordinance is not for the purpose of promoting the health, safety, morals or the general welfare of the community and is not made in accordance with a comprehensive plan and designed to lessen congestion in the streets or to secure safety from fire, panic and other dangers or to procure the

health and general welfare, or in accordance with other provisions of Section 89.-040, R.S.Mo.; that said ordinance is arbitrary, unreasonable and discriminatory, without any basis for singling out the property of defendants Eddy and constitutes illegal spot zoning".

The general authority for the enactment of zoning regulations in cities in this state. by the local legislative bodies thereof is provided in Section 89.020 RSMo 1959, V.A.M.S., for the prescribed purposes of "promoting health, safety, morals, or the general welfare of the community".

Further defining and circumscribing that authority Section 89.040 provides, in part, as follows:

"Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; * * *. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the values of buildings and encouraging the most appropriate use of land throughout such municipality".

Appellants in their first three points relied on assert, respectively, that the trial court erred in finding (1) that there is not a sufficient change in use in the neighborhood of the Eddy property to support, justify or authorize enactment of Ordinance No. 25574; (2) in finding that such ordinance was not made in accordance with Sections 89.020 and 89.040, nor for the purpose of health, safety, morals and general welfare of the community, and (3) in finding that such ordinance was not made in accordance with any comprehensive plan or designed to lessen congestion of streets or to secure safety from fire, panic and other

dangers, or to promote health and general welfare.

■ We are mindful, as in all cases tried without a jury, that on appeal the review must be "upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Rule 73.01(d) V.A.M.R.; Cranford v. Langston, Mo.App., 356 S.W.2d 581.

■ At the outset appellants direct our attention to the fact that this court in Allega v. Associated Theatres, Inc., Mo.App., 295 S.W.2d 849, 856, reaffirmed and applied the principle that "unless it appears that the ordinance is clearly arbitrary and unreasonable, the court cannot substitute its opinion for that of the council, or if the question is reasonably doubtful or even fairly debatable, the court cannot do so". See also Miller v. Kansas City, Mo.App., 358 S.W.2d 100, 104; Flora Realty & Inv. Co. v. City of Ladue, 362 Mo. 1025, 246 S.W.2d 771, 777; Landau v. Levin, 358 Mo. 77, 213 S.W.2d 483, 485. Those who attack the reasonableness of such an ordinance have the burden of proving it unreasonable. State ex inf. Taylor ex rel., Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762.

■ As to the changes in the vicinity of Armour Boulevard and The Paseo, there was, as we have stated, substantial evidence that following the prevailing war conditions, many of the residences in the neighborhood had been converted into two and three-family homes and a few high apartments had been erected, but that the vicinity in all directions and for several blocks from the Eddy property, had remained zoned solidly for R–2 to R–5 uses; that such changes had occurred prior to the general revision of the city's zoning regulations in 1951, as stated by witnesses for both appellants and respondents. Luke Choplin, witness for the appellants, was asked: "Q.

How recently was there a predominence of one-family occupancy in this area? * * * A. I would say since 1940. * * *. Q. That all happened prior to 1951? A. To my knowledge. Q. You don't know of any change since 1951? A. In respect to conversions, are you talking about? Q. That's right. A. Not especially". Appellants' witness Darling was asked: "Q. Do you know of any conversions since 1951? A. I couldn't point to any; I don't know". Their witness Neil Ross said such houses had been turned into rooming houses near his apartment at 3717 Paseo and he was asked: "Q. Those changes happened before 1951? A. I won't say that; it might be; but I know it has changed over there". There was evidence that the building of the freeway near the north end of The Paseo and the condemnation of lands thereabouts had forced many families to the south. There was also evidence that a few attractive apartment buildings and office buildings had been erected on Armour Boulevard in recent years, at or near business street intersections, as we have pointed out, and that at some points racial integration had approached within a block of The Paseo. We deem such evidence substantial and in accord with the court's findings.

◼ We next consider whether there was substantial evidence that the ordinance serves the purposes of health, safety, morals and general welfare. It has been ruled that "the exclusion of buildings devoted to business, trade, etc., from residential districts, bears a rational relation to the health and safety of the community. Some of the grounds for this conclusion are promotion of the health and security from injury to children and others by separating dwelling houses from territory devoted to trade and industry; suppression and prevention of disorder; facilitating the extinguishment of fires, and the enforcement of street traffic regulations and other general welfare ordinances; aiding the health and safety of the community, by excluding from residential areas the confusion and danger of fire, contagion, and

disorder, which in a greater or less degree attach to the location of stores, shops, and factories". Village of Euclid v. Ambler, 272 U.S. 365, 391, 47 S.Ct. 114, 71 L.Ed. 303. The same careful consideration is required by the enacting authority to amending ordinances as to the master zoning order. State ex rel. Cooper v. Cowan, Mo.App., 307 S.W.2d 676; Taylor v. Schlemmer, 353 Mo. 687, 183 S.W.2d 913. When passed, however, the ordinance is presumed to be valid. Downing v. City of Joplin, Mo., 312 S.W.2d 81.

◼ We fail to detect any evidence tending to prove that the proposed solitary reclassification of the Eddy property on the boulevard intersection from residential to business use will promote the health or secure the safety or improve the morals of anyone. As to general welfare, there was no evidence of a city-wide need for another gasoline filling station or other retail business to be conducted on the Eddy property. While there was some opinion evidence that a filling station on the corner would be a convenience to the persons living nearby, there was no showing that the general welfare would be served by it. One witness said a filling station would afford an open view of approaching cars at the intersection, but the court could reasonably hold that such would not constitute a sufficient benefit to the general public to meet the statutory requirements for the exclusive rezoning of the Eddy property.

As to their contention that the ordinance complied with the statutory requirement that it be "in accordance with a comprehensive plan", appellants maintain that in view of the rezoning of small tracts on Armour Boulevard from residential to commercial uses at Main Street, Walnut Street and Warwick Boulevard, and the corner tracts at 35th Street and Woodland Avenue, and on The Paseo at 39th, 44th and 45th streets, hereinbefore mentioned, an existing "comprehensive plan" for business uses had thus been created, with which Ordinance 25574 will be in accord. As pointed out,

such exceptions are so located as to time and place that they are not substantial proof of a comprehensive plan to zone the area in question for business uses.

This case has a distinguishing element. As we have noted, the only property rezoned by the terms of the ordinance is the corner tract of the appellants Eddy, located centrally in a contiguous and extensive boulevard area used and zoned since 1923 for some form of residential purposes only. Thus the ordinance does not merely enlarge an existing area zoned for business, but creates a business area in a residential zone where none had been before.

Appellants cite and rely greatly on an opinion of this court in Miller v. Kansas City, Mo.App., 358 S.W.2d 100, upholding a rezoning ordinance therein considered. The case is inapplicable here for, as stated therein at page 105: "This ordinance extends an existing business district; it does not create a new one". Furthermore, the evidence herein tends to show the ordinance in question was "spot zoning" which is held, with a few exceptions not here in point, contrary to the spirit and intent of the zoning law. "Spot zoning" is defined as follows:

"Spot zoning, by which a specific parcel of property is placed in a different zone from that of neighboring property, frequently is accomplished by amendment of a general zoning ordinance, or by other change or modification of zoning laws or regulations; and such an amendment or change is improper where the change in the regulations is unreasonable and discriminatory.

"Ordinarily, a change in zoning regulations involving a single or a very few properties should be made only where new or additional facts, such as a change in conditions, or other considerations materially affecting the merits have intervened since the adoption of the regulations; and whether such a change will be permitted depends on whether the change is reasonably related to the public welfare, and is in accord with the statutory purposes or the general scheme of a comprehensive zoning plan.

"As a general rule, a municipality is without authority to single out one or a few lots in an amendatory regulation and arbitrarily remove therefrom restrictions imposed on the remaining portions of the same zoning district. Accordingly, a reclassification of only the lot or lots of a single person from a residential to a business, commercial, or industrial district, without lawful basis and without reference to the public welfare, is improper spot zoning. An application for such a change should be regarded with suspicion and should be denied unless the change requested will conform to a comprehensive plan and serve one or more of the purposes enumerated in the zoning statute". 101 C.J.S. Zoning § 91, pp. 843–844–845.

In addition to the foregoing objections to "spot zoning", is the fact that it often encourages, if it does not necessitate, justifiable efforts on the part of other property owners in the vicinity to seek similar reclassification in order to regain their values or to preserve them, thus tending to depart further from the spirit, design and comprehensive plan of the zoning system.

■ Appellants' last point is that the court erred in holding the ordinance arbitrary, unreasonable and discriminatory without any basis for singling out the property of defendants Eddy and constitutes illegal spot zoning. It is our conclusion that the foregoing record adequately supports the trial court in so ruling, and in granting the injunctive relief prayed.

The judgment of the trial court should be affirmed. The Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion of DEW, Special Commissioner, is adopted as the opinion of the court. The judgment of the circuit court is affirmed.

All concur.