Robert OPPENHEIMER, Appellant,

v.

Robert S. BURNS and Lawrence R. Brown, and Mary Oppenheimer, Respondents.

No. 23931.

Kansas City Court of Appeals.

Missouri.

Feb. 3, 1964.

Albert W. Thomson, Clarence Finley, Kansas City, Linde, Thomson, Van Dyke, Fairchild & Langworthy, Kansas City, of counsel, for appellant.

David R. Hardy, Charles L. Bacon, Frederick Beihl, Kansas City, Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, of counsel, for respondent Mary Oppenheimer.

MAUGHMER, Commissioner.

This is a suit in equity. There is little disagreement as to the facts. Only two wit-

nesses testified—one contestant and the attorney for the other contestant. Of vital importance in determining the controversies arising on this appeal are the provisions of a property settlement and the contents of a 1961 income tax return.

■ This being a suit in equity tried by the court, we are required to "review the case upon both the law and the evidence". But "[t]he judgment shall not be set aside unless clearly erroneous". V.A.M.R. Civil Rule 73.01(d). Numer et al. v. Kansas City, Missouri et al., Mo.App., 365 S.W.2d 753, 758.

In January, 1961, Robert Oppenheimer, appellant, and Mary Oppenheimer, one of the respondents, then husband and wife, but with a divorce suit pending, entered into a written Property Division Agreement, which became effective February 9, 1961, on which date these people were divorced. In this Agreement, which we shall hereinafter refer to as the Settlement, the parties recited that it finally settled all of their marital property rights. Custody of the minor child was placed with Mary Oppenheimer, who was allowed $100 monthly for their support and maintenance and $1.00 per month as alimony. Each party was to pay his or her own attorney fees. Respondent Robert S. Burns, attorney for Mr. Oppenheimer, and respondent Lawrence R. Brown, attorney for Mrs. Oppenheimer, were by the Settlement appointed as joint trustees to collect, liquidate and convert into cash the marital assets and from the proceeds pay off all obligations, including income taxes and accrued alimony and child support. The residue was then to be divided two-thirds to Mary, and one-third to Robert.

These assets included a residence, the usual incidental items and numerous insurance policies which had substantial cash values. The largest and most valuable asset was 10,000 shares common stock of Oppenheimer Brothers, a family-held corporation. In accordance with the Settlement provisions, this stock was liquidated or sold and converted into $121,174.84 cash. No disputes have arisen concerning the sales and conversions of these assets. The Settlement carried the following provisions:

"Upon liquidation of Oppenheimer Bros. Inc., its assets will be placed with Robert Burns and Lawrence Brown as co-trustees to be distributed on their joint order as herein provided: First to the payment of the corporate debts, then to any unpaid tax liabilities of the Parties, with interest and penalties to the extent then determined, with respect to years prior to 1960 for which the Parties have filed joint Federal and Missouri income tax returns. The Parties will file joint Federal and Missouri income tax returns for the calendar year 1960 and the balances of tax, if any, shown to be due thereon shall next be paid out of the proceeds of said liquidation. * * * The balance of the proceeds of liquidation, including any assets distributed in kind, will be held until the amount of Federal and State income taxes due on account of and attributable to the gain realized by the Parties on the liquidation" (Oppenheimer stock) "shall have been determined, at which time the taxes so attributable shall be paid out of such balance".

Mr. Oppenheimer married (Jean) soon after his divorce from Mary and about July, 1961, became a resident of New York State. He filed his 1961 Federal Income Tax Return jointly with his wife, Jean, and included as income therein the long term capital gain of $60,587.41 received from liquidation of the Oppenheimer stock. As computed and shown on the face of this Return, the amount of tax due was $24,278.-61, which sum the respondent trustees paid to Internal Revenue out of the trust funds. The trustees also paid the state income tax.

Mr. Oppenheimer claims that these income tax payments do not discharge the obligation of the trustees to pay the "taxes attributable to the gain realized" on the

sale of the Oppenheimer stock. He claims he is entitled to be paid seven additional sums out of the trust fund. The trustees refused to allow or pay any of these seven items and sought a judicial determination as to their liability therefor, by filing a Bill of Interpleader in which lawsuit Robert and Mary Oppenheimer were joined as defendants.

■ We shall now identify and describe these seven claims as presented by Mr. Oppenheimer. One was in the sum of $39.60, which amount Mr. Oppenheimer had been required to refund to the Veterans Administration on an insurance policy dividend overpayment. Unquestionably he is entitled to reimbursement for this overpayment, the original total payment having been turned over to the trustees. No appeal has been taken from the allowance of this particular claim.

The other six claims arise out of and can only be determined by careful examination and consideration of the 1961 Income Tax Return and the Settlement provision that the "amount of Federal and State income taxes due on account of or attributable to the gain realized by the parties on the liquidation" of the Oppenheimer stock "shall be paid out of the trust funds".

The 1961 Federal Income Tax Return which was prepared by or under the direction of Mr. Oppenheimer contains some unexpected elements which we now mention: (1) It was a joint return in the names of Robert Oppenheimer and of his present wife Jean; (2) It included 1961 earnings of Jean in the sum of $3900.01; (3) It included a loss of $790.45 for a business activity carried on for a part of 1961 by Robert and Jean; (4) It listed as an expense, attorneys' fees in the sum of $1,916.-46; (5) It listed as a credit on the tax due the sum of $2,101.73, which was a refund due the Oppenheimers for overpayment of their 1960 income taxes; (6) It listed and took credit for $615.78, the amount withheld during 1961 from the salary of Jean Oppen-

heimer, who had been employed as a teacher at Smith College.

■ We now consider the six claims in detail: (1) Appellant claims that the $2,-101.73 refund for overpayment of the 1960 Federal tax and which was credited in like amount on the 1961 tax was his personal property, reduced the 1961 tax by that amount, is a part of the tax "attributable" to the sale of the Oppenheimer stock and should be repaid to him. The trial court denied the claim. Under the evidence here the 1960 overpayment was on a joint return by Robert and Mary Oppenheimer, although it actually existed because of excessive withholding from Robert's 1960 salary. It was an overpayment or a prepayment which both owned. The Settlement recites and provides that Robert and Mary file a joint income tax return for 1960. We affirm the trial court judgment denying Robert's claim for recovery of this sum.

■ (2) Robert deducted on the Return as an expense the sum of $1,916.46 paid by him to his attorneys. He says such deduction reduced the tax due by $555.78, which he seeks to recover from the trust funds. It will be noted that Robert does not claim that this attorney fee in toto is a joint expense or a trust expense or that the Trust should pay this whole fee. He only asks reimbursement for $555.78 which he claims was the Income Tax saving resulting from this deduction. The attorneys to whom this fee was paid represented Robert in the divorce proceedings and he estimated he paid them about $3,000. However, he says part of their services included securing saleable title in his name to the Oppenheimer stock (At the time the marital difficulties arose it was held by Mary as his attorney-in-fact). The Settlement Agreement specifically provided that each contestant should pay his or her attorney fees. We approve the trial court's refusal to allow reimbursement to Robert for this alleged tax saving because, first of all, we think the payment was for his own individual attorney fees in the divorce contest and

its various ramifications, and if this be so, the item is not properly deductible as an income tax expense. If on Internal Revenue audit it is disallowed, the estate will be required to pay the additional tax. If the deduction is permitted to stand, both Robert and Mary will receive the benefit. If this amount of attorneys' fees was in truth and in fact solely an Oppenheimer stock sale expense, the trust estate, including both Robert and Mary, should probably pay the fee in full but appellant does not even advance this theory.

(3 and 4) Robert remarried soon after the divorce and the 1961 Federal and State tax returns which he filed were joint—in his name and in the name of his present wife, Jean. He contends that by reason of his remarriage he was able to file a joint return and thereby save the trust estate $3,297.59 on the Federal return and $22 on the Missouri state return. He says the taxes would have been greater by these amounts had he remained single or had he filed an individual return for 1961. That is true. However, the Settlement squarely provides that the trust estate shall pay "the income taxes due on account of and attributable to the gain realized". The whole gain was reported on the return by Mr. Oppenheimer. The trust estate paid all—100 percent—of the tax due as shown by the return. If later, Internal Revenue audits determine that additional taxes are due, then the estate will be required to pay those. It could not reasonably be said, we think, that more than 100 percent of the tax actually paid could be attributable to the sale of the Oppenheimer stock. We approve the finding that Robert's claims under 3 and 4 be denied.

We have had more difficulty with the remaining two items which we shall designate as No. 5 and No. 6. (5) Mr. Oppenheimer, because he was a resident of Missouri for part of 1961, and a resident of New York for part of that year, was faced with the problem of determining whether a return should be filed in both states, and if so, what income was properly attributable to each state. Mr. Oppenheimer, or more likely his New York attorneys, consulted Touche-Ross, New York City accountants and received some advice from them on the problem. Mr. Oppenheimer in this proceeding asks that the trustees be directed to pay him $725.00 which he says is the amount of the Touche-Ross fee. No part of this fee has been paid by Mr. Oppenheimer, the record contains no bill in any amount from Touche-Ross, and no attempt was apparently made to show that the $725 was a reasonable fee for their services. Accounting fees incurred in the preparation of tax returns which are reasonable in amount would be, we think, a tax expense and under the Agreement, payable out of the trust funds and probably a deductible Income Tax expense item. However, we believe that under the showing here—nonpayment of the fee and with no showing as to its reasonableness, or even that this specific fee had been charged—the court properly denied appellant's claim for payment.

(6) The trial court directed the trustees to pay Mr. Oppenheimer and his present wife the sum of $615.78, which sum had been withheld from her wages and which was credited against the tax due on the 1961 Oppenheimer return. No appeal has been taken from this portion of the judgment by either Mary Oppenheimer or by the trustees, nor has the allowance been questioned on the appeal orally or in the written briefs. Its correctness therefore is not before us for review. However, we shall comment briefly on this item. Certainly Jean should pay no part of the Robert and Mary income tax. However, Jean's salary of $3900.01 was included in the gross income shown on the return. Jean's tax on her salary would be almost as much as was withheld. When the full amount is returned to her, the tax due on her earnings will in effect be paid out of the trust funds and Jean personally will have paid no tax.

Prior to the commencement of the present litigation the trustees had made three partial distributions, including accrued child support and alimony payments and the sum of $25,466.96 for Federal and State income taxes, leaving an undistributed balance of $12,956.28. In the present lawsuit the trustees asked the court to approve, and the court by its judgment did approve, the three accountings and the partial distributions there reported. The amount of moneys therein accounted for and distributed is far in excess of $15,000, the jurisdictional limit of this court. However, neither party questions those three settlements in any respect and no appeal has been taken from that portion of the judgment. The undisputed balance ($12,956.28) is within our jurisdiction and the items actually in dispute on this appeal are in an even lesser amount. This court therefore has jurisdiction.

The judgment below ordered a further or fourth distribution, including payment of accrued alimony and child support allowances and then directed the trustees to liquidate and cash the remaining assets (of undetermined value) and hold such funds, together with any others not already distributed or ordered to be distributed "until three years from the date of filing of the 1961 Federal, New York and Missouri income tax returns of Robert Oppenheimer, or until further order of this court". The exact amount of the funds so sequestered does not appear but it is only a few thousand dollars. We believe there is a likelihood of further income tax assessments arising (a) from the doubtful deduction of $1,916.46 as attorney fees and (b) from a possible New York State assessment. The order to hold the funds for three years (Statute of Limitations period) or until the further order of the court seems reasonable and we shall not disturb it.

We have examined some of the cases cited by appellant and by respondents. We do not disagree with the principles and rules pronounced therein. But none of those cases is decisive on the issues presented by our particular case. The facts here are peculiar to this case and exactly similar facts will not, we think, be found elsewhere. The decision here should, must and does rest upon the application of equity to our facts, with special emphasis upon the Property Settlement Agreement and the 1961 Income Tax Return.

We believe the trial court's judgment is not clearly erroneous, but is rather, supported by the evidence. The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.