Walter F. MILLER et al., Plaintiffs-
Respondents,

v.

KANSAS CITY, Missouri, Defendant-
Appellant,

King Louie Bowl, Inc., Intervenor-Appellant.

No. 23486.

Kansas City Court of Appeals.
Missouri.

June 4, 1962.

Tucker, Charno, Willens & Jouras, Kansas City, for appellant.

Clem W. Fairchild, Thomas J. Daly, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, for respondents.

SPERRY, Commissioner.

This suit was instituted by owners of residential property located near the intersection of Troost with 79th Street and 79th Street Terrace, in Kansas City, Missouri. Plaintiffs prayed that an ordinance which rezoned certain property, near those inter-

sections, from residential to commercial usage, be declared invalid and that defendant be enjoined from issuing a building permit to King Louie Bowl, Inc., the owner of the property so rezoned. The city of Kansas City, Missouri, will be referred to as defendant, and King Louie Bowl, Inc., will be referred to as intervenor. From a decree granting plaintiffs the relief prayed, defendant and intervenor appeal.

In 1947 this property was annexed to the city and was zoned in accordance with a comprehensive plan then in effect in the area along Troost which was, at that time, a part of the city. A strip 150 feet wide, east and west of Troost, was zoned for commercial purposes and the areas beyond were zoned for residences. Until 1955, the only commercial improvement on the west side of Troost, between 79th and 79th Terrace, was a relatively small building at 79th Terrace, used as a garage. The remainder of the commercial strip, 200 feet wide from east to west, and extending from 79th Street Terrace to 79th Street was also unimproved, except for a plot upon which was a residence, facing 50 feet on 79th, and running south 106 feet. At that time intervenor, who was the owner of the commercially zoned strip lying south of 79th for a distance of 312 feet, constructed a building on the south portion of it, which houses 24 bowling lanes, a restaurant and a bar. It also acquired and procured the rezoning (with restrictions) from residential to commercial, of a strip lying west of the commercial zone, improved a portion of it as a parking lot and has been so using it since then. It provides facilities for parking 145 cars. Intervenor's total investment is $700,000.00.

Intervenor now seeks authority to construct an addition to its building, on the north, to provide for 20 additional bowling lanes. It owns the remainder of the plot of ground mentioned and seeks its rezoning to commercial purposes, and authorization to improve and use it for parking cars in connection with its business. The total cost of this improvement, including the building, will be $225,000.00. The lot, when completed, will accommodate 156 cars. The ordinance was referred to the City Plans Commission where evidence was heard and it was recommended it be disapproved; but the council enacted the ordinance rezoning the property, over plaintiffs' protest. Intervenor proceeded to grade the property, removing some trees and plantings along the outer edges of the parking lot, as formerly constructed, and gravelled the newly added area. This suit was filed and nothing further has been done.

The area of the parking lot, as it has existed, is paved with asphalt and was surrounded on the south, west, and north by a louvered board fence forty inches high, and also, on the west and north by plantings. It is required, and planned, that the south, west, and north sides of the lot, if the addition is authorized, will be surrounded with a 40 inch board fence and with trees and shrubbery, but it will take five years or more before the plantings are fully effective. There was testimony from qualified planners and architects that such screening would, eventually, effectively screen the lot from the view of residents of the area and greatly reduce the effect of noise and lights emanating therefrom.

Plaintiffs offered the testimony of a number of witnesses. Mr. Monroe, qualified in the fields of architecture and zoning, testified to the effect that an ordinance extending a business district into a residential area, constituted "spot" zoning; that the area west of Troost on 79th and 79th Terrace was gradually developing as previously zoned; that this rezoning does not tend to protect or preserve the residential property of the area; that the addition of about 50% more bowling lanes would bring more traffic to the area; that he saw beer cans and bottles lying between the parking lot and 79th Street; that the amendment to the zoning ordinance will bring no benefit to the public generally.

Mrs. Murray lived at 918 E. 79th Terrace, in a house to the west of and adjoining the

new part of the parking lot. She stated that lights from the lot (or from cars in the lot) shine into her windows; that intervenor removes garbage at 2:00 a. m., to her annoyance; that conditions are worse since the lot was enlarged; that there are many children in the neighborhood who will be endangered by additional traffic on 79th Terrace, which is narrow, uncurbed, and in poor repair.

Mrs. Scanlon, a realtor, had appraised the dwelling house at 916 E. 79th Terrace in 1959, prior to extension of the parking lot, at $12750.00; that, afterward, F.H.A. appraised it at $10,000.00, for which sum it was sold. She believed the extension of the parking lot depreciated the value of the property in the area.

Mrs. Bader had lived across the street, south from the extension of the lot, for 25 years. She stated that, prior to the extension, she was 300 feet from the lot but that she will be 100 feet from the extension; that traffic on 79th Terrace has increased since the lot was extended, and she saw broken bottles and trash on the Murray property; that many children travel on the street to and from Troost, in daytime and in the evening; that extension of the lot will be detrimental to the value and usage of her property.

Mrs. Finkel bought and owns a duplex on 79th Street. She stated that since the shrubbery was removed along the border of the original parking lot, noise has increased; that her family is disturbed by noises at night caused by garbage trucks and by other noises and lights from cars leaving late at night; that her property has depreciated in value some $5000.00 because of changes made in the lot.

Mr. Vogl stated that he formerly owned 916 E. 79th Terrace; that since the extension was made he has picked up beer bottles and cans from the front yard; that there is more noise since the trees in the new section were removed; that there is more traffic; and that property has depreciated in value because of the extension.

Mrs. Giordano, who lives at 917 E. 79th Terrace, across the street from the lot, stated that she is annoyed by noise from trash removal at 1:30 a. m., by motors and horns, and by patrons shouting and screaming; that cars are always in the lot and that they drive across adjoining property to enter the parking lot.

Mr. Saurbier purchased a duplex on 79th adjoining the parking lot, after intervenor's building and lot were constructed. He stated that the used part of the parking lot was then 25 or 30 feet away from his property and was screened, but that the screening has been removed on the east and south of his lot; that he has lost tenants and income as a result of intervenor's actions; and that his property has depreciated in value.

Mr. Massey, secretary of City Plans Commission and Board of Zoning Adjustment, had been employed in zoning work for 15 years. He testified to the effect that the original master zoning plan, including Troost Avenue, was adopted in 1923; that, in 1946, the area here involved was zoned by amendment to the master plan, in accordance with its provisions; and that it became effective January 1, 1947.

Mr. Falin, Director of Traffic for Kansas City, stated that, prior to 1959, there were complaints of traffic congestion on Troost in this area; that the trouble was caused by access and egress to the parking lot both being on Troost, side by side; that this caused all of the trouble; that when a driveway was added to the lot, on 79th Street, the trouble ceased; that he has never had a complaint of congestion on 79th; that if traffic from the lot were directed eastward on 79th and 79th Terrace, and if ingress was confined to Troost, it would not create any traffic problem on any of those streets; that the parking lot and traffic attracted by it, tends to lower the safety of residents of the area; that the zoning change made by this ordinance is not "spot zoning", which is a "coined phrase difficult to define with exactitude".

It will be noted that much of plaintiffs' testimony revolved about conditions as they now exist, before the proposed expansion of intervenor's facilities has been made. That is true of noises from trash haulers, motors, the shouting and screaming of patrons, and the annoyances caused by lights. Such depreciating effect on property as may be due to conditions *now* existing, because of prior rezoning and construction, is not material in considering the effect of *enlarging* the bowling and parking facilities, except in so far as it may indicate that such conditions will be aggravated by the improvements contemplated. Furthermore, the evidence is that such objectionable conditions as may have existed have been accentuated by the removal of fencing and plantings on the north and west side of the old lot, together with several trees formerly growing in the new area which will be included in the parking lot as expanded. The rezoning and the granting of the building permit is conditioned on fencing and screening the entire area.

Defendants offered the testimony of several witnesses. Mr. Sixta, an architect, stated that the grade of 79th Terrace is 30 inches higher than the lower portion of the parking lot.

Mr. Stern, realtor and appraiser with 30 years of experience, stated that he was familiar with property on the west side of Troost Avenue, in this area; that 79th Street was occupied by duplexes built during the past few years; that on 79th Terrace, west of Troost, the houses are small and are approximately 35 years old; that the street is of asphalt, old and worn, no sidewalks or curbing; that the property sought to be rezoned is best suited to be used for parking purposes; that it is not suitable for residences because it is economically unsound to build new houses in an area occupied by old housing of the character existing there; that business properties on Troost, south of intervenor's property, are dilapidated and conditions are not likely to greatly improve; that residential development is not only hindered by the old housing in the area, but by the commercial area on Troost; that, since the duplexes on 79th were built or purchased after construction of intervenor's property, their value would not be depreciated by expansion of intervenor's facilities; that improvement of the vacant property with a hard surfaced parking lot, properly fenced and screened by plantings, would enhance the value of other property on 79th Terrace, in that area; that much of the annoyance from lights and noise would be eliminated by fencing and screening, and that the lot would also be largely hidden by the growing trees and shrubbery, so that the view from the residences would be better than it was before the improvement was made.

Mr. Lerner, a principal stockholder and officer of intervenor, stated that when the property was acquired in 1955 it was a dumping ground for trash, cans, bottles, etc.; that the new duplexes on 79th Street were built after intervenor had constructed its building and parking lot; that south of 79th Terrace, on the west side of Troost, there were grocery stores, taverns, and shops; that the buildings were "junky"; that there has been no improvement since except the construction of a grocery store at the intersection; that about 30% of the bowling is done by young people, by church leagues, and by P.T.A.; that there has never been a complaint by the city or police department concerning the operation of the business; that the entire lot will be surrounded by a louvered fence and plantings of shrubs and trees so as to give effective year around screening from surrounding property; that traffic will enter from Troost and exit on 79th and 79th Terrace, from which points it will be directed eastward; that lighting will be deflected from the surrounding area.

Mr. Bush, senior partner of Hare and Hare, city planners and landscape architects with 43 years of experience, also experienced in traffic studies, testified on behalf of intervenor. He stated that he had studied the area; that the trend all over the country now is to get away from strip zon-

ing, to develop shopping centers, to cut back business districts further than a narrow strip, in order to provide parking; that conditions south of 79th on Troost present a typical example of development usually found in strip, or narrow business zoning; that it is marginal in character because of lack of space for sufficient parking; that the residences on 79th are very attractive but that the area on 79th Terrace south and west of this lot, is a poor residential area; that the residences would be improved by construction of the lot as proposed, with proper screening; that the lot itself is not suitable for residential purposes and probably will never be so used; that traffic moving out of the lot will naturally move to Troost; that property values on E. 79th Terrace, in this area, will not be depreciated by this rezoning and improvement but will be benefited.

From the above testimony it appears that the residential property on E. 79th, just off of Troost, could not have been depreciated by intervenor's construction made in 1955, for the duplexes were built *after* the rezoning and construction had been done. Nor can those owners complain of the building *extension* contemplated herein, because it will be done on property which has always been commercially zoned. If any property is damaged by the proposed improvement it must be because of increased traffic brought about by additional customers of intervenor and by extending the lot close to those properties on 79th Terrace. The capacity of the lot, when extended, will only be eleven vehicles more than it is at this time; and the bulk of the addition will be further from property on 79th than is the present lot. However, more people will use intervenor's bowling facilities and the lot will be materially closer to the 79th Terrace homes than is the present lot.

As to the properties on 79th Terrace, judging from their age as shown in evidence, the houses were built before the area was annexed to the city and zoned, in 1947. They were not built by persons relying on a continuance of any zoning plan then in ex-

istence, hence there can be no claim by the owners in the nature of estoppel from reliance on an established legal condition.

The ordinance here involved is amendatory of the general ordinance in effect since 1947, which, itself, was an extension of the general zoning ordinance adopted in 1923. It is required that it have the same careful consideration that was given to the enactment of the original ordinance; but the act of the council in rezoning this property is presumed to be valid and those challenging its validity have the burden of proving that charge. Unless it appears to be *clearly* arbitrary and unreasonable the court cannot substitute its opinion for that of the council or, if the question is *reasonably doubtful* or *fairly debatable,* the court cannot do so. Allega v. Associated Theatres, Mo.App., 295 S.W.2d 849, 856.

In Allega v. Associated Theatres, supra, l. c. 850, this court said that zoning regulations may be enacted for the purpose of promoting health, safety, morals, or the general welfare of the community; and that such regulations must have some reference or relation and conformance to a comprehensive plan and designed to lessen congestion in the streets, to secure safety from fire, panic and other dangers, promote health and general welfare, provide adequate transportation, water, sewerage, schools and parks; that they should be made with reasonable consideration to the character of the district and its particular suitability for particular uses, and with a view to conserving the value of building and encouraging the most appropriate use of the land throughout the municipality.

The court found that the ordinance was passed without reasonable consideration for conserving the value of residences in the neighborhood and will depreciate the value thereof. There was testimony to that effect but there was testimony from well qualified witnesses to the contrary, that the improvement sought to be made would benefit the residential properties when com-

pleted, fenced and screened. But the fact that financial loss to some may be occasioned by a zoning ordinance is not controlling. Flora Realty and Investment Company v. City of LaDue, 362 Mo. 1025, 246 S.W.2d 771, 779.

The court found that the effect of the ordinance will be to substantially and unreasonably endanger the safety of children because of a substantial increase in the volume of traffic and the attendant disturbance during hours of sleep. There was testimony from Mr. Falin to the effect that there would be no congestion of traffic as a result of this proposed improvement. There is a difference between volume and congestion. Vestry of St. Mark's, etc. v. Doub, 219 Md. 387, 149 A.2d 779, 783. There is but little substantial evidence tending to support the conclusion that increased volume will endanger children.

The court also found that there has been no change in the character or use of the land in the area since the passage of the original zoning ordinance (1946); that commercial zoning has not been extended at any other point in the area. That is the gist of the testimony, except for the establishment of intervenor's improvements and the attendant rezoning, in 1955. However, there was substantial and convincing testimony to the effect that the area from 79th south, including the block west of Troost on 79th Terrace, was stagnated because of improper and detrimental strip "zoning" on Troost made, originally, in 1923, and extended southward from 79th in 1946. The fact that the property now owned by intervenor was a dumping ground until 1955 is some evidence of stagnation of the area in view of the phenomenal growth of Kansas City elsewhere. The evidence was that the commercial property on Troost, south of intervenor's, is "junky" and will likely remain so, and that the plot here involved will not likely be improved with housing because it is unsuitable on account of its proximity to the older housing across the street, and because of its proximity to Troost, (including an unsightly garage, surrounded in the

rear by old automobiles and trash, located on the south side of 79th Terrace at Troost) and because the lot slopes from north to south, and to the center from west to east, so that the lower part, fronting 79th Terrace, is 30 inches lower than the grade level of that street.

The court intimated that the council, once having established a comprehensive zoning plan, is not authorized to change property classifications within a district except with reference to health, safety, morals and general welfare, and in accordance with the comprehensive plan. This ordinance extends an existing business district; it does not create a new one. It may be said to be in furtherance of the comprehensive plan. Suffield Heights Corporation v. Town Planning Comm. of Town of Manchester, 144 Conn. 425, 133 A.2d 612, 615, Wade v. Town Plan, etc., Town of Hamden, 145 Conn. 592, 145 A.2d 597, 599; Pumo v. Borough of Norristown, 404 Pa. 475, 172 A.2d 828, 830. This case is unlike that of Allega v. Associated Theatres, supra, on the facts. Nor is it always necessary that a change in conditions be shown in order to justify a change in zoning. Cianciarulo v. Tarro, (R.I.) 168 A.2d 719, 725. Here, the area is stagnated because of what is now regarded as unwise strip zoning. Conditions would seem to justify a re-examination of the situation and a change in zoning by extending a business district so as to permit land to be used in connection with an established business, and for purposes for which it is peculiarly adapted, if the council believed it to be for the general welfare.

The court found that the sole purpose of the ordinance was to permit intervenor to expand its business without regard to statutory requirements concerning zoning. There is evidence to that effect but there is substantial evidence in the record tending to prove that this amendment will permit an improvement that will benefit the property values of the area; that it will permit a proper use of land unusable in its present

classification; that it will add substantially to the taxable value of Kansas City property, probably to a greater extent than if the plot were used for housing, considering the character of housing now existing on 79th Street Terrace and the evidence tending to prove that this plot is unfit for such use and probably will not be used therefor. The council could have believed its action to be justified on the grounds that it was in the interest of the public even if intervenor was also benefited thereby. State ex rel. Christopher v. Matthews, 362 Mo. 242, 240 S.W.2d 934, 938; Sec. 89.050 RSMo 1959, V.A.M.S. See Colt v. Bernard, (Mo.App.) 279 S.W.2d 527, 530.

■ The court found that plaintiffs have been annoyed by noise, lights and disturbances. Such annoyance occurred under present conditions, after actual extension of the lot, after fencing and shrubbery was removed but before its replacement. There is evidence from which it might be found that when the improvement is completed, as planned, such annoyance will be greatly abated. There was also testimony as to the present unsightliness of the lot, largely due to lack of screening; but mere aesthetic considerations, in *themselves*, have never been held to bear such relationship to public welfare as to sustain the restrictions of zoning ordinances. Women's Kansas City St. Andrew Society v. Kansas City, 8 Cir., 58 F.2d 593, 603.

■ The council has general authority to rezone property from one classification to another. Sec. 89.050 RSMo 1959, V.A.M.S. In order for the council to legally exercise that power it is not necessary that it strictly and rigorously comply with *every* directory provision of the statutes. Cianciarulo v. Tarro, supra, 168 A.2d 724. "Spot zoning" is frowned upon; but expert witnesses did not agree that this is a spot zoning case. In any event, whether an amendment will be held void depends upon the circumstances of *each* case. State ex rel. Christopher v. Matthews, supra. Under the evidence in this record it cannot be

said that the council clearly acted arbitrarily, capriciously, or unlawfully, or that it did so beyond reasonable doubt.

The judgment is reversed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.

All concur.