BROADWAY APARTMENTS, INC., a corporation, Kent M. Simmons and Patricia Simmons, Frank H. Fristoe and Harriette Fristoe and Associated Builders Corporation, Appellants,

v.

John M. LONGWELL et al., Respondents.

No. 24999.

Kansas City Court of Appeals.

Missouri.

Dec. 31, 1968.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 3, 1969. Application to Transfer Denied April 14, 1969.

Terence C. Porter, Columbia, Welliver, Porter & Cleaveland, Columbia, of counsel, for appellants.

Carl F. Sapp, Columbia, Sapp, Woods, Dannov & Orr, Columbia, of counsel, for respondents.

MORGAN, Judge.

Plaintiffs sought to have a zoning ordinance (No. 3160) of Columbia, Missouri, declared invalid. Trial to the court re-

sulted in a judgment in favor of defendants and plaintiffs have appealed.

It is charged that the trial court erred in not declaring the ordinance void and invalid, because (1) it is arbitrary, unreasonable and bears no reasonable relationship to the promotion of health, safety, morals or general welfare of the community as required by the provisions of Sections 89.010 to 89.140, V.A.M.S., and Article II, Section 18(27) of the Home Rule Charter of the City of Columbia, (2) it constitutes "spot zoning" in that it is a reclassification of a single tract under one ownership from residential to commercial use, and (3) it was adopted by whim and caprice and resulted from an impermissible change of mind by the members of the City Council.

The property in question is a 9.19 acre tract in the northwest quadrant of the intersection of Broadway and Conley Lane in the west portion of Columbia. Broadway is a major thoroughfare which traverses the city from its eastern to its western limits and is also known as Route TT. Conley Lane is a state maintained "outer loop" or circumferential highway (Mo. 740) commencing at Interstate 70 two miles north of the subject tract and circling through the west and south part of the city, past the football stadium of the University of Missouri, to U.S. Highway No. 63 southeast of the city. The parties refer to the undeveloped 9.19 acres as the "Brady Tract" and it is located approximately two miles west of the central downtown business district of Columbia.

The defendant City of Columbia reorganized in 1949 under a Home Rule Charter adopted at a special election on March 29, 1949. Article II, Section 18(27), thereof delegated to the City Council the power to divide the city into districts for zoning purposes. Article XI, Section 96, designated the City Planning and Zoning Commission as an advisory body to make such recommendations to the council as it deemed " * * * necessary or desirable for the promotion of the health, safety, morals and general welfare of the inhabitants of the city * * *." Pursuant thereto the council on June 27, 1952, adopted and enacted a comprehensive zoning ordinance which is now embodied in Chapter 19 of the Revised Ordinances of the City of Columbia, 1964. Of the several zoning districts established by definition, the following are of immediate interest here: (1) District R-1, One Family Dwelling District, (2) District R-3, Multiple Family District, (3) District C-1, Intermediate Business District, and (4) C-P, Planned Business District. It appears the latter two classifications authorize development of a "service area" or what has become known as a neighborhood shopping center. A C-P District was more restrictive than a C-1 District in that it required prior council approval of all building plans.

The Brady tract (then 15 acres) was annexed by the city on December 15, 1955, and was zoned R-1 or Single Family Residence District. The Bradys purchased the 15 acres in 1956. In 1963 this tract along with a large area in the northwest portion of the city, was rezoned to R-3 or Multiple Family Residence District. This change was initiated by the city itself. Following the rezoning from R-1 to R-3, Brady sold the north four acres for development by Holiday House Apartments. The State Highway Department acquired 1.81 acres for improvement of Conley Lane and the remaining 9.19 acres are for consideration here.

The first individual effort to rezone the Brady tract occurred when a developer, Donald Golden, took an option to purchase and filed an application on July 15, 1965, to have this acreage rezoned from R-3 to C-P or Planned Business District. The application was considered at meetings of the Zoning Commission during August, September, October and November of 1965. On January 13, 1966, by a vote of 4 to 3 the commission recommended that the council approve the application. On February 7, 1966, the council voted 4 to 1 to deny the request.

The next effort to rezone the property, and the one involved in this action, began with Bradys' application of October 13, 1966, to rezone the tract from R–3 to C–1 or Intermediate Business District. Oddly enough, positions were reversed, and after a 4 to 3 vote of the commission recommending denial of the application, the council on January 3, 1967, voted 4 to 1 for its approval. This action within the realm of the duly designated duties of the council in the performance of its legislative functions is presumed to be valid, and as we held in Miller v. Kansas City, Mo.App., 358 S.W.2d 100, "Unless it appears to be clearly arbitrary and unreasonable the court cannot substitute its opinion for that of the council or, if the question is *reasonably doubtful or fairly debatable*, the court cannot do so." State ex rel. Christopher v. Matthews, 362 Mo. 242, 240 S.W.2d 934. Further, as conceded by plaintiffs, those who attack the reasonableness of such an ordinance have the burden of proving it unreasonable. 101 C.J.S. Zoning § 363, p. 1203; Flora Realty & Inv. Co. v. City of Ladue, 362 Mo. 1025, 246 S.W.2d 771; Strandberg v. Kansas City, Mo., 415 S.W.2d 737.

We first look to the use being made of those areas immediately adjacent to the intersection. The southwest area comprises the Leawood Subdivision of some 188 residence properties of which 36 were duplexes. This development was started in 1955, prior to the annexation of the Brady tract, by one of the plaintiffs, Mr. Fristoe. This addition is joined on the west (south of Broadway) by an area known as the "Johnson tract" which is zoned for commercial use. To the southeast (east of Conley Lane) is located one older, large and beautiful residence and behind this home is a series of one family dwellings. To the northeast there is one residence. Farther east and north of Broadway is an office building of the MFA Insurance Company in a C–O, Planned Office District. Farther east (1800 feet from the Brady tract) is the Broadway Shopping Center covering 15 acres and having among other businesses a drive-in theater. North along the east side of Conley Lane we find the Town & Campus and Tiger Village Apartment complexes. Immediately north of the Brady tract (west of Conley Lane) is located the Holiday House project. Some 300 feet farther north is a tract 750 feet by 400 to 450 feet zoned C–1, Intermediate Business, as is another area of two or three acres farther north. To the west of the Brady tract we find the Broadway and Gatehouse Apartments. Farther west 1600 to 2000 feet is a "Silvey Tract" zoned for commercial use. All of the named developments are extensive high density apartment complexes.

Plaintiff called Raymond A. Beck, Director of Public Works, and a member of the Zoning Commission. He had voted to approve the Golden application (C–P), but had voted against the Brady application (C–1). He testified " * * * I felt the area was logical to be used by commercial; however, I felt it would be beneficial for this to be a controlled commercial area." He further testified that building set-back requirements could be made under C–1. He did not believe other surrounding properties would depreciate in value because of this rezoning. He considered that Broadway was a 75 foot four lane street and Conley Lane had a width of 120 feet. He explained that Hare & Hare, a planning and consulting firm of Kansas City, was employed by the city to conduct a study and make recommendations by way of comprehensive planning in regard to changes in zoning ordinances. The firm's report included, "The site on Conley Lane and West Broadway is in our opinion logical for a shopping center development."

Mr. Simmons testified that he lived in the area and had circulated a petition protesting the Brady application and had obtained some 200 signatures. He thought traffic would be more congested at the intersection and did not approve of the possibility a 3.2 beer tavern might be located in the shopping center. A Mr. Cross, as a

witness, thought that the surrounding properties would depreciate in value and had similar objections to those of Mr. Simmons.

Mr. Jack Blaylock, a realtor and member of the Zoning Commission, had voted against both applications. It was his opinion that a C–1 classification at Bradys', "could conceivably" result in damage to 5 or 6 residences immediately south across Broadway because of the noise, traffic and lighting. However, if properly controlled, he thought the area a logical place for a high type business use. It was his opinion that traffic was not a particular problem in this area.

Mr. Jimmie Proctor, an experienced appraiser and realtor, was called by plaintiff. It was his opinion the highest and best use of the Brady tract would be for garden-type apartments. He questioned the success of a shopping center at this location in view of others already operating. He had observed that the Broadway center generally had one or two buildings vacant. It was his opinion Columbia had a greater demand for lands available for apartments than for commercial use. A survey by him indicated Columbia had more than enough land already zoned for commercial use. He explained that traffic would be increased to the detriment of the area. However, we find, this conclusion is somewhat in conflict with the theory such a project would not be successful at this location. It was his opinion that the value of homes in the immediate area would be lowered.

One of the plaintiffs, Mr. Frank Fristoe, testified he had protested both applications because of detrimental effect rezoning would have on the value of homes in the Leawood Addition.

Defendants called Edmund M. Brown, a council member, who had voted in favor of both applications. With the population expanding to the west and south and this intersection being a major interchange providing easy access to the public, he thought this tract should be used for business purposes. It was his opinion that such a use would promote the general welfare of the community, primarily because of the convenience to the people of the area and particularly those in the growing apartment developments. He thought that as the city grew it needed new business areas, or they would go outside the city where there would be no control or regulation.

Richard Knipp, a council member and building contractor, testified Columbia followed the neighborhood concept in city planning and this includes service facilities. As to the streets, he thought those in this area were the most adequate in the city. He had voted "no" on the first application because he felt it should be tabled until receipt of the Hare and Hare report. He commented, "I have always considered it to be a logical tract for development of a commercial area."

Mr. John H. Longwell, former Dean of the University of Missouri School of Agriculture, and Mayor at times of interest here, testified he voted to deny rezoning in both instances. He testified that full and open hearings had been held in considering both applications, and every one had been allowed to present his arguments for or against the propositions. It was his personal opinion there was no present need for another business area. He did testify that none of the council members acted frivolously, capriciously or arbitrarily in considering the matter of rezoning the Brady tract but that each had given it his sincere consideration.

█ It is established that whether or not an amendment to zoning regulations will be held void depends on the circumstances of each case. Miller v. Kansas City, supra.

██ Plaintiffs by argument rely heavily on two decisions of this court. In Numer v. Kansas City, 365 S.W.2d 753, an effort was made to rezone one lot at the intersection of two boulevards (Paseo & Armour) in Kansas City from residential

to commercial use for a filling station. In Allega v. Associated Theatres, Inc., 295 S.W.2d 849, the City of Independence sought to rezone 20 acres from residential to commercial use for a drive-in theater. The proposed site was surrounded by residential uses. We found each proposal to be unreasonable. However, the dissimilarity of facts considered in either cited case to the facts of the instant case prevents either holding being controlling here. The contrast is obvious from the exhibits of record. Looking, again, to the northwest quadrant of the intersection, we find in addition to the Brady tract and high density apartments that there are other tracts zoned for commercial use and to the northwest we find large areas of undeveloped lands. From the plats it would not be inaccurate to say the tract in question is on the near outer-limits of the city. The parties agree that Columbia had adopted the "neighborhood concept" of zoning, i. e., placing limited business or service areas near the areas of concentrated population. The evidence is undisputed that the city has expanded to the west with a large number of persons living in high density apartment areas. Whether this is due to the known extremely fast increase in the number of students living in Columbia or the normal growth of a city, the people are there. Apparently the council determined that this growth demanded another service area in the Brady area as well as provisions for possible similar needs on the Johnson and Silvey tracts at a later date. Most of the witnesses, whether for or against the proposal, indicated they had considered questions relating to traffic, parking, effect on value of surrounding property, lighting, noise and the general welfare of people in the community. The primary concern of protestors appears to have been the possible effect on the value of residential properties nearby. The evidence is not convincing that there would be a certain depreciation in value of any residence. Even though this might possibly be an accurate prediction of future events, such fact would not, by itself, be controlling. "Every valid exercise of the police power is apt to affect the property of some one adversely." Flora Realty and Inv. Co. v. City of Ladue, supra. "Some readjustment of values is usually an incident of any zoning ordinance." Strandberg v. Kansas City, supra. It was declared in Kellog v. Joint Council of Women's Auxiliaries Welfare Ass'n., Mo., 265 S.W.2d 374, 377, that "A court will not disturb legislative or administrative action in zoning unless beyond reasonable doubt the action is an abuse of discretion or an excess of power, having no substantial relation to the evils to be remedied or to the public health, safety, and welfare or other proper object of the police power." We do not believe the evidence here to be clear and convincing that the council ignored the general welfare of the people of Columbia. The council had every right to anticipate and provide for the future needs being created by the rapid development of the western part of the city.

■■ Plaintiffs further contend the ordinance constituted "spot zoning" and is thereby invalid. It is true that all of the land being reclassified by this amendatory ordinance is owned by the Bradys, but this fact alone does not compel our finding the ordinance to be invalid. As argued by plaintiffs, the term is generally used in a critical sense where one owner seeks a classification for his property wholly inconsistent with those of his neighbors. However, we find no case where the lone issue of sole ownership of the tract involved controlled the decision. This question was recently reviewed by our Supreme Court in the exhaustive opinion found in the Strandberg case, supra. There it may be found that "spot zoning" is only improper when it is out of harmony with or without reference to the public welfare. Such is not true in this case.

■■ Plaintiffs last contend that once having denied the Golden application the same council could not approve the Brady application. We disagree. The applications requested similar but different zoning classifications; and even though they had

been identical, we agree with the trial court that a decision by a legislative body is not res judicata barring future consideration of the same question. If the council can legislate in anticipation of the needs of the community, obviously it must have the power to change or amend action taken when shown the needs did or did not develop as anticipated. To rule otherwise would stalemate the council in its legislative functions and prevent any action seeking adjustments for changing needs. On this point plaintiffs cite Wippler v. Hohn, 341 Mo. 780, 110 S.W.2d 409. However, the action there taken was disapproved because of changed zoning without notice or hearing. Here extended hearings were held on both applications.

Plaintiffs have failed to prove the ordinance to be unreasonable and detrimental to the public welfare, and even if shown to be a debatable issue, we cannot declare the ordinance invalid.

The judgment of the trial court is hereby affirmed.

All concur.