Wallace J. TREME et al.,
Plaintiffs–Appellants,

v.

ST. LOUIS COUNTY, Missouri,
Defendant–Respondent,

and

Grasso Brothers, Inc.,
Intervenor–Respondent.

No. 40523.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 14, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 12, 1980.

Husch, Eppenberger, Donohue, Elson & Cornfeld, Carroll J. Donohue, Sally E. Barker, St. Louis, for plaintiffs–appellants.

Steven W. Koslovsky, Robert H. Grant, Albert A. Michenfelder, Jr., Clayton, for defendant–respondent and intervenor–respondent.

SMITH, Presiding Judge.

Plaintiffs appeal from the judgment of the trial court upholding the constitutionality and validity of an ordinance of St. Louis County rezoning a tract of land from M–3 to C–8.[1] Plaintiffs are the owners of residential property which abuts the tract. Grasso Bros., Inc., the owner of the tract and the party petitioning for the rezoning, intervened in the case.

The property is located at the southeast corner of Watson and Grant Roads in St. Louis County.[2] The area is unincorporated, although across Watson is the incorporated city of Webster Groves and across Grant Road is the incorporated city of Crestwood. The tract is trapezoidal in shape and covers 18.1 acres. It extends approximately 1200 feet south of Watson Road on Grant and approximately the same distance east of Grant on Watson. It is unimproved except for one building which was formerly a residence and is now a commercial establishment. The preliminary development plan calls for a two building complex and extensive parking to house a shopping center. North across Watson from the tract the land is zoned commercial and the land in use is either commercial or institutional; west across Grant the land is zoned commercial and light industrial and is used for light industrial. The tract has been zoned M–3 (Planned Industrial District) since 1965. Several applications for a change of zoning to C–8 were made between 1965 and 1975 and were either withdrawn or denied. The present application was made in 1975 and was approved by the County Planning Commission by a 5–4 vote. The reasons for this approval were stated as follows:

"In summary and considering the extensive commercial land uses already existing along Watson Road, the absence of interest in industrial development of the subject site, the petitioner's demonstrated concern for nearby residential property owners and the previous favorable recommendation for a similar request for the subject tract;[3] the Planning Commission recommends approval of the subject request."

In due course the County Council enacted Ordinance 7878 which approved the preliminary development plan and rezoned the tract to C–8. Plaintiffs sought a declaratory judgment in Circuit Court to declare the ordinance invalid and sought injunctive relief to prevent St. Louis County (through the Planning Commission) from proceeding to consider a final development plan for the property. From a judgment denying relief to plaintiffs and upholding the validity of the ordinance, plaintiffs appeal.

We must deal with one preliminary matter raised only peripherally by the parties. The court's judgment consisted of five numbered paragraphs. Paragraph 1 held valid Ordinance 7878; paragraph 2 held valid Sec. 1003.145 (as amended) St. Louis County Zoning Ordinance, which established the C–8 district; paragraph 4 denied plaintiffs' prayer for judgment and injunction; and paragraph 5 taxed the costs against plaintiffs. Paragraph 3 directed the County and the Intervenor "to forthwith cause and effect the amendment of Ordinance 7878, by appropriate means, so as to prohibit the construction of any part of any building on the real property described in Ordinance

1. M–3 is a planned industrial district which authorizes any industrial usage permitted under the zoning code for any other industrial district plus those commercial uses related to the industrial activity or complex. C–8 is a planned commercial district and will be discussed more fully hereafter. Both districts are "floating zones" (see infra) available only after a preliminary development plan is approved by the County Council and usually require an application for a change of zoning.

2. Actually a small portion of land directly on the corner is occupied by a commercial establishment and is not a part of the tract.

3. This statement refers to a 7–1 approval by the Planning Commission in 1971 of a petition to rezone to C–8. The County Council denied the 1971 petition.

7878 closer than 90 feet from the south line of said tract, . . . ." This paragraph further recited that it was separable from the remainder of the paragraphs and that those paragraphs were not dependent upon the validity of paragraph 3, and that "if a reviewing court should hold that this court did not possess the power to enter that portion of this judgment contained in Section 3, then it is the intention of this Court that the balance of this judgment shall be in full force and effect and not be rendered invalid or in any way impaired by such finding or partial invalidity."

Plaintiffs argue that this finding by the court renders the judgment inherently contradictory and demonstrates that Ordinance 7878 is not a reasonable exercise of the zoning power. We will deal with that argument later. The matter of immediate concern is whether paragraph 3 of the judgment is within the jurisdiction of the court. If not, it is void.

▬▬ We are aware of no authority which permits a court to amend or require the amendment of a legislative enactment. Such authority would appear to run counter to the doctrine of separation of powers. Courts obviously have the power to declare a legislative enactment void or invalid as contrary to constitutional mandates. But ordering the amendment of an enactment is, in essence, legislating, which is not the function of a court. We do not, however, base any conclusion on that ground. Rather we hold that the court exceeded its jurisdiction in ordering amendment of the ordinance because it went beyond the issues presented and the relief sought in the pleadings. It is well established in this State that "a judgment which is based upon issues not made by the pleadings is coram non judice and void, at least in so far as the judgment goes beyond the issues presented and raised by the pleadings." *Riley v. LaFont,* 174 S.W.2d 857, 859 (Mo.1943) [5, 6] quoting from *Hecker v. Bleish,* 319 Mo. 149, 3 S.W.2d 1008, 1019 (1927) [22]. *See Weatherford v. Spiritual Christian Union Church,* 163 S.W.2d 916, 918 (Mo.1942) [2–4]; *Kennedy v. Boden,* 241 Mo.App. 86, 231

S.W.2d 862, 865–866 (1950) [3, 4]; *Poole v. Poole,* 287 S.W.2d 372, 374 (Mo.App.1946) [3]; *Masters v. Masters,* 315 S.W.2d 870, 872 (Mo.App.1958) [1–4]. No party requested that the ordinance be amended. No issue was raised in the pleadings and no relief was ever requested which would authorize the court to make an order concerning the location of the buildings on the development site. The court exceeded its jurisdiction in ordering amendment of the ordinance.

▬▬ It is also well established that where a portion of the judgment is void as beyond the pleadings, the remainder of the judgment remains valid if the void portion is separable. *Kennedy v. Boden, supra; Poole v. Poole, supra.* Unless the void section here is so contradictory of the remainder of the judgment as to render the entire judgment nugatory (which will be discussed later) section 3 appears to be separable. It was so delineated by the trial court. Paragraph 2 deals with the constitutionality of the enabling ordinance and nothing in paragraph 3 relates to that. Paragraph 1 upholds the validity of Ordinance 7878 and nothing in paragraph 3, on its face, deals with that determination. Paragraphs 4 and 5 simply effectuate the findings in 1 and 2. We hold paragraph 3 void but separable from the remainder of the judgment.

The next matter to be considered is plaintiffs' attack on the validity of Sec. 1003.145, St. Louis County Zoning Code, which creates the C–8 classification. The C–8 Planned Commercial District Regulations create what is frequently referred to as a "floating zone." Unlike most districts created by zoning ordinance it has no fixed location within the community. It is usually attached to a particular tract of land through rezoning of that land by the County Council upon petition by the landowner. Sec. 1003.145.1 specifically states that the purpose of the C–8 regulations is "to facilitate the establishment of combinations of developments and uses for which no provision is made in any other 'C' Commercial District or the establishment of developments and uses in locations where it would

be appropriate to the area if it were to take place under approved site plans and conditions necessary to protect the general welfare." A C–8 District may contain any use permitted in any "C" district but the specific ordinance creating the district on a particular tract of land may restrict the uses to be permitted on the tract. In establishing a particular C–8 district the Council is to determine "that any particular tracts or areas should be developed for commercial use, but because of potential conflicts with adjoining uses, existing or potential, a greater degree of control of the manner of development is necessary to protect the general welfare that (sic) is possible under the regulations of the other 'C' Commercial Districts."

Sec. 1003.145 contains extensive provisions concerning the procedures to be followed in obtaining a C–8 rezoning and the extent of control of the development by the Council and the Planning Commission. We need not set those out at length. We can summarize them by stating that they place upon the Planning Commission and ultimately the County Council virtually total control of the appearance and nature of the development.

We have found no cases in this State which have decided the validity of such "floating zones." Plaintiffs attack Sec. 1003.145 on the bases that (1) it constitutes an improper delegation of the legislative function for failure to establish a uniform set of regulations capable of application to all property so zoned, (2) fails to define standards by which the approval or disapproval of a proposed C–8 project is to be determined, and (3) permits spot zoning. The question is whether Sec. 1003.145 is invalid because of any or all of these conditions.

St. Louis County is a county of the first class of the State of Missouri, operating under a home rule charter pursuant to Art. VI, Sec. 18(a) through (1) of the Missouri Constitution. Section 64.010 et seq. R.S.Mo. 1978 contains enabling legislation in the area of planning and zoning for first class charter counties. In Casper v. Hetlage, 359 S.W.2d 781, 790 (Mo.1962) [10] the court held that the zoning ordinances of the County took precedence over Sec. 64.140 R.S.Mo.1959 because in local matters the County derives its powers from the Art. VI, Sec. 18(c) of the Constitution and not from the statutory grant of power found in Sec. 64.010 et seq. See also State ex rel. City of Creve Coeur v. St. Louis County, 369 S.W.2d 184, 187 (Mo.1963) [3]; Williams v. White, 485 S.W.2d 622, 624 (Mo.App.1972) [3]; State ex rel. St. Louis County v. Campbell, 498 S.W.2d 833, 836 (Mo.App.1973) [4]. The County Charter, Art. II, Sec. 2.180(22) grants to the County Council "Pursuant to and in conformity with the constitution of Missouri . . . legislative power pertaining to . . . planning and zoning, in the part of the county outside incorporated cities . . . ." In assessing the validity of Sec. 1003.145 we must determine whether it runs afoul of some constitutional limitation, not whether it comports with statutory authority.

The validity of zoning regulations was established in Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). To a large extent that decision was based upon a recognition that modern urban life with its concentration of population requires certain restrictions in respect of the use and occupation of private lands. We do not read that case as mandating that zoning ordinances have rigidly fixed zones containing one type of use each. That was the scheme of the ordinance before the Court, but the Court's approval of zoning legislation was not contingent on such a scheme. Rather it was based upon the proper exercise of the police power to control the development of a community for the general welfare. "Floating zones" have received court approval in several states against attacks identical to or similar to those leveled here. See Sheridan v. Planning Board of City of Stamford, 159 Conn. 1, 266 A.2d 396 (1969); Rudderow v. Township Committee of Tp. of Mt. Laurel, 121 N.J.Super. 409, 297 A.2d 583 (1972); Bigenho v. Montogmery County Council, 248 Md. 386, 237 A.2d 53 (1968); Bellemeade Company v. Priddle, 503 S.W.2d 734 (Ky.1974); Beall v. Montgomery County

*Council*, 240 Md. 77, 212 A.2d 751 (1965); *Huff v. Board of Zoning Appeals*, 214 Md. 48, 133 A.2d 83 (1957); *Rodgers v. Village of Tarrytown*, 302 N.Y. 115, 96 N.E.2d 731 (1951); *Lutz v. City of Longview*, 83 Wash.2d 566, 520 P.2d 1374 (1974). They have also been found improper in several states. *Eves v. Zoning Bd. of Adjustment of Lower Gwyneddl Twp.*, 401 Pa. 211, 164 A.2d 7 (1960); (superseded by statute as stated in *Russell v. Penn Township Planning Com.*, 22 Pa.Cmwlth. 198, 348 A.2d 499); *Summerell v. Phillips*, 282 So.2d 450 (La.1973); *Hartnett v. Austin*, 93 So.2d 86 (Fla.1956).

The *Eves* case, *supra*, was based upon the concept that the "floating zone" was contrary to the comprehensive plan required of zoning. But subsequent cases upheld such zones where they were created and immediately attached to the tract involved. *See Donahue v. Zoning Board of Adjustment of Whitemarsh Twp.*, 412 Pa. 332, 194 A.2d 610 (1963); *Cheney v. Village 2 at New Hope, Inc.*, 429 Pa. 626, 241 A.2d 81 (1968). Such an approach does no more than place a premium upon originality in finding new names for essentially the same zoning classification. It serves as a recognition that municipal legislative bodies need a certain flexibility in determining whether particular types of uses should be allowed within the environs of an area zoned for some other use where the newly allowed use can be made compatible with the existing uses. This same recognition is found in the cases approving the "floating zone" concept.

■ We find the reasoning of the cases which have upheld the "floating zone" to be persuasive. We find no constitutional restriction which precludes St. Louis County from the creation of the C–8 zone under its police power. There has been no delegation of legislative authority to rezone here. Rezoning to C–8 can be accomplished only by legislative act. The Council certainly has the power to amend its zoning ordinances, and rezoning to C–8 is an amendment of those ordinances. The ordinance must rest upon some rational basis of classification and apply alike to all persons and things

falling within a designated class. The regulation and restriction into districts must be reasonable, uniform or universal and non–discriminatory, the restrictions having a fair tendency to accomplish or aid in the accomplishment of some purpose for which the city may exercise its power. *Flora Realty and Investment Co. v. City of Ladue*, 362 Mo. 1025, 246 S.W.2d 771 (banc 1952) [3]. The C–8 district created by each specific ordinance has uniform restrictions within that district. By definition in Sec. 1003.145 the development of the district must be under single ownership or management control. We do not interpret *Flora Realty, supra*, as requiring that all zones designated by the same number in the basic zoning ordinance have exactly the same regulations and restrictions, so long as the regulations and restrictions within the district when it is established in a specific area are uniform or universal. Otherwise we would be placing the same premium on imagination in name selection as has occurred under *Eves, supra*. Here there are certain mandatory requirements for uses within the zone which the Council is not free to expand. The regulations limit the uses, establish minimum performance standards and sign regulations. The Council may impose greater restrictions and is required to prescribe height restrictions, lot area and yard requirements, and off–street parking and loading requirements. Plaintiffs as abutting property owners, are in no position to complain that the Council may exercise its legislative judgment to impose more stringent requirements in one C–8 zone than it does in another.

We further find no objection to the fact that the ordinance does not spell out in detail the standards upon which a determination to rezone to C–8 is to be made. The section does provide for general standards which are to be considered by the legislative body. Rezoning cannot, by its very nature, be based upon precise and inflexible standards, for each plot of ground is different and the environment in which it lies is different. It must remain within the legislative judgment whether rezoning of a particular tract is within the purposes of the

zoning ordinances and serves the general welfare. We have no basis for concluding that a zoning ordinance which allows flexibility to achieve proper development in an urban area is constitutionally infirm because of that flexibility. So long as the legislative determination is not arbitrary, capricious or unreasonable, landowners in the plaintiffs' position have no cause to object because the determination made under the general standards of the ordinance produce different results on different tracts of land.

Plaintiffs also contend Sec. 1003.145 authorizes "spot zoning." That is true, but then so does any zoning ordinance which allows for amendment, or for that matter allows zoning in the first place. The term "spot zoning" is frequently erroneously used as an opprobrium. The proper approach to charges of "spot zoning" is stated in *Huff v. Board of Zoning Appeals*, 214 Md. 48, 133 A.2d 83 (1957) as follows:

"When a zoning ordinance or an amendment puts a small area in a zone different from that of the surrounding area, we have what may be called 'spot zoning,' using the term in a descriptive sense. Such zoning may be invalid or valid. If it is an arbitrary and unreasonable devotion of the small area to a use inconsistent with the uses to which the rest of the district is restricted and made for the sole benefit of the private interests of the owner, it is invalid . . . . On the other hand, if the zoning of the small parcel is in accord and in harmony with the comprehensive zoning plan and is done for the public good—that is, to serve one or more of the purposes of the enabling statute, and so bears a substantial relationship to the public health, safety, morals and general welfare, it is valid." [2]. Accord: *Numer v. Kansas City*, 365 S.W.2d 753, 760[5] (Mo.App.1963).

■ The fact that a zoning ordinance may allow spot zoning (as virtually all zoning ordinances do) does not make the ordinance bad. The question is whether the particular zoning or rezoning is done for reasons other than the general welfare.

■ We find no error in the trial court's finding upholding the validity of Sec. 1003.-145. In so finding we do not ignore the potential for abuse which is inherent in that section. We alluded to certain such potential abuses in *Herman Glick Realty Co. v. St. Louis County*, 545 S.W.2d 320, 325 (Mo. App.1976) [4]. As stated there, the utilization of C–8 to prevent competition is improper. So also would be the forcing upon a landowner of a particular development desired by the Planning Commission or the Council as the only alternative to a refusal to rezone from an unusable use to a clearly proper use other than C–8. This was, at least inferentially, the situation in *Glick, supra*. We have also mentioned the possibility of utilization of Sec. 1003.145 to effectuate *improper* spot zoning. But the potential for abuse does not make the ordinance invalid, and if abuses occur, which we do not presume they will, they can be corrected upon judicial review utilizing the established standards for such review.

We now turn to plaintiffs' points that Ordinance 7878 is unconstitutional, unreasonable and arbitrary. This argument is based upon a series of contentions i. e.: (1) paragraph 3 of the trial court's order was, in effect, a finding of unreasonableness because it contradicted implicitly the finding of reasonableness in paragraph 1, (2) the rezoning is not for the general welfare and will adversely affect the public roads and the value of nearby property, (3) there are no standards or criteria for approval of the final development plan, (4) the ordinance deviates from the general plan of St. Louis County and, (5) the rezoning is the product of contract and conditional zoning.

■ In reviewing these contentions we are bound by the standard of review set forth in *Vatterott v. City of Florissant*, 462 S.W.2d 711 (Mo.1971) l.c. 713 as follows:

"Whether the classification and enforcement of a zoning ordinance is reasonable and constitutional or whether it is arbitrary and unreasonable and therefore unconstitutional in its application to a specific property depends upon the evidence and the facts and circumstances of

each case . . . . The legislative body has the duty to determine the use classification for any particular area. Unless it appears that the determination by that body is arbitrary and unreasonable, the court cannot substitute an opinion for the council's determination. If the council's action is fairly debatable, the court cannot substitute its opinion. The legislative body's enactment is clothed with a presumption of validity, and he who would challenge the reasonableness of the ordinance as applied to specific property has the burden of proving unreasonableness . . . . These concepts apply equally to rezoning and refusal to rezone."

■ We do not find that paragraph 3 of the court's order is so contradictory of paragraph 1 of that order as to establish that Ordinance 7878 is unreasonable. The order makes it clear that the holding in paragraph 3 is not one of unreasonableness. It deals not with the rezoning of the land to C–8 but with approval of the particular development of that tract as it relates to only one thing—set back lines. We interpret paragraph 3 as nothing more than the trial court's expression that had it been approving the development plan it would have required a greater set back between the buildings to be built and plaintiffs' property. This is not a finding that the Council's determination to rezone is not "fairly debatable." We find no merit in this argument.

■ There was evidence from several experts concerning the reasonableness of the rezoning. All experts were agreed that a proper zoning for the area immediately adjacent to Watson Rd. is commercial. The dispute was whether the remainder of the tract should be multi–family residential, light industrial or commercial. The uses in the general area along Watson and Grant in the vicinity of the tract in question are predominately commercial or industrial. From Laclede Station Road to the east, to Sappington Road to the west, the area along Watson Road is heavily commercial with several shopping centers. No development to light industrial had occurred on the

tract in question for the 10 years after it was zoned M–3 and there was no evidence of interest in residential development. There is no basis for concluding that it was contrary to the general welfare to rezone this property for a use clearly compatible with the nature of development along Watson Road.

■ There was conflicting evidence on the degree of damage to the property of plaintiffs from the development under C–8. That favorable to the Council's determination was that the impact was slight and was the same as would occur had the land been developed under the M–3 classification. The development plan calls for the use of berms, trees and landscaping to buffer the plaintiffs' homes from the development. The fact that some loss will be sustained to adjoining landowners as a result of a rezoning is not controlling in determining whether the rezoning is so arbitrary and unreasonable as to be invalid. *Strandberg v. Kansas City*, 415 S.W.2d 737, 743 (Mo. banc 1967) [7, 8].

■ The evidence of adverse impact upon the public roads was also conflicting. That supportive of the Council's action was that the impact was not substantial and that because of the completion of I–44 since the zoning to M–3 the traffic on Watson is less now than in 1965. The ordinance requires the developer to improve the portion of Grant Road next to the development and to widen a one–lane bridge on Grant in close proximity to the development. It is at least fairly debatable that given the heavily commercial nature of Watson Road the rezoning to C–8 here would have no substantial adverse effect on traffic sufficient to warrant denying the rezoning on that ground. *See Huttig v. City of Richmond Heights*, 372 S.W.2d 833, 842–843 (Mo. 1963) [5–8]; *Herman Glick Realty Co. v. St. Louis County, supra.*

■ The plaintiffs rely heavily upon the testimony of all the witnesses that each would have preferred a greater set back than the 55 foot minimum of the proposed buildings from the nearest of the plaintiffs'

lands,[4] or would prefer some other location for trash and loading facilities. However, these preferences cannot rise to the level of making the development approved by the Council arbitrary and unreasonable. Presumptively every development plan is less than perfect but such lack of perfection does not make the rezoning invalid. We find no basis for concluding that the ordinance granting the rezoning is arbitrary or unreasonable.

As to the final development plan, we find no lack of standards to be applied by the Planning Commission in granting final approval. Ordinance 7878 contains extensive conditions and requirements to be met by the developer and specifically requires the developer to adhere to the preliminary plan. The conditions and requirements are quite specific and adequately guide the Planning Commission. *State ex rel. Continental Oil Co. v. Waddill*, 318 S.W.2d 281 (Mo.1958). Matters such as the composition of the sight–proof fences and buffering required by the ordinance and compliance with County and State standards for traffic and water–runoff are properly left to the administrative body within the guidelines established by the Council.

Plaintiffs also attack Ordinance 7878 on the basis that it conflicts with the "General Plan for St. Louis County" adopted by the County Council in 1974. The map covering the area in which the Grasso tract is located, which accompanied that plan, designates the tract here involved as residential. The County Charter, unlike the state statute authorizing zoning, does not require zoning in accordance with a comprehensive plan. We will assume, however, that comprehensive planning is an inherent and essential element of legal zoning. *See Plaas v. Lehr*, 538 S.W.2d 919 (Mo.App. 1976) [1] and authorities therein cited. Generally the comprehensive plan referred to in the decisions is the zoning ordinances and maps. *Strandberg v. Kansas City*, 415 S.W.2d 737 (Mo. banc 1967); *Miller v. Kan-*

*sas City*, 358 S.W.2d 100 (Mo.App.1962). The County Charter does authorize the County Council to provide for a ". . . county plan for the physical development of the county including recommendations for the most desirable use of land within the county for residential, recreational, agricultural, commercial, industrial and other purposes; . . . ." We will presume that the General Plan is the development plan authorized by the Charter and that it serves as a comprehensive plan for purpose of zoning. In approving the General Plan the Council specifically referred to the Plan as a "flexible guideline" and further stated "but no failure to explicitly modify the General Plan shall operate to deny or prejudice any person seeking rezoning or other development permission." We, therefore, must conclude that the Plan is a general guideline to zoning within the County, but that it is "flexible" and is not intended to control zoning decisions on specific parcels of land. We note in this connection that no rezoning of this parcel from M–3 to residential was made by the Council after adoption of the Plan indicating that the Council did not regard the General Plan as a binding zoning determination. The rezoning to C–8 does not involve the creation of a new use in an area to which such use is a stranger. This is instead the extension of an existing business district, or more properly, a recognition that the land in question is suited for a use compatible with the area in which it is located. Such extension or recognition is not contrary to the General Plan nor at war with comprehensive planning. *Miller v. Kansas City, supra.* It must be noted that the land had lain undeveloped for ten years under its prior zoning. A reexamination of its zoning would appear to have been warranted in view of the development of the region proximate and the lack of development of the tract itself. Regional considerations, including development in neighboring governmental subdivisions are important in zoning decisions. *Huttig v. City of Richmond Heights*, 372 S.W.2d 833 (Mo.

4. We can only speculate that this testimony was the producing cause of paragraph 3 of the trial court's order.

1963); *Wrigley Properties Inc. v. City of Ladue*, 369 S.W.2d 397 (Mo.1963). Nor does the refusal of the Council to rezone the tract upon prior request establish that the present rezoning is in conflict with comprehensive planning.

"... [A] decision by a legislative body is not res judicata barring future consideration of the same question. If the Council can legislate in anticipation of the needs of the community, obviously it must have the power to change or amend action taken when shown the needs did or did not develop as anticipated." *Vatterott v. City of Florissant*, supra, l.c. 715 quoting from *Broadway Apartments, Inc. v. Longwell*, 438 S.W.2d 451 (Mo.App. 1968).

We find no invalidity in Ordinance 7878 because of the claimed variation from the General Plan.

Plaintiffs' final attack is that Ordinance 7878 is invalid because it is the product of conditional and/or contract zoning. Conditional zoning, as here used, means that the rezoning is permitted upon condition that the land be developed in a particular way. *See Hartnett v. Austin*, 93 So.2d 86 (Fla. 1956). Our previous holding that Sec. 1003.145 does not run afoul of constitutional restrictions serves to uphold Ordinance 7878 against this charge. A "floating zone" by its very nature is conditional.

The "contract zoning" charge arises from the requirement of Ordinance 7878 that the developer improve Grant Road next to the property and widen a one–lane bridge on Grant Road near, but not adjacent to, the property. It can be conceded that Grant Road was in need of improvement for many years before the enactment of Ordinance 7878, and that the County had recognized that need and intended to improve Grant Road when funds were available. It is also apparent that the development of a substantial commercial shopping center on the tract here involved would increase traffic on Grant Road and necessitate the immediate improvement of that road. "Contract

zoning" involves a circumstance in which a county or municipality exercises its power to rezone in exchange for considerations given by or exacted from the developer. In *State ex rel. Noland v. St. Louis County*, 478 S.W.2d 363 (Mo.1972) the court dealt with this problem in the context of subdivision legislation. The test to be applied there was:

"From all of which, it may be concluded that the guidelines often used by this court in considering zoning cases properly apply as well in subdivision planning cases with the added element that there must be some 'reasonable relationship' between the proposed activity of the landowner and the exaction of government.[6] Whether or not the conditions imposed are within or outside the area of the subdivision would be immaterial so long as they met such a standard." l.c. 367.

In *City of Bellefontaine Neighbors v. J. J. Kelley R & B Co.*, 460 S.W.2d 298 (Mo.App. 1970), we upheld the validity of a road improvement promise by the subdivision developer as a condition to development of the subdivision. We recognized that such power could arise from a zoning or street development plan, and in that case the city had acted under a provision of its zoning ordinance.

■ The test applied in *State ex rel. Noland v. St. Louis County, supra*, has been applied in other jurisdictions. *State ex rel. Myhre v. City of Spokane*, 70 Wash.2d 207, 422 P.2d 790 (1967); *City of Knoxville v. Ambrister*, 196 Tenn. 1, 263 S.W.2d 528 (1953). It is a proper test to be applied to rezoning of the kind contemplated in Sec. 1003.145. Where the offer made or the exaction demanded for the rezoning bears no reasonable relationship to the activities of the developer the action of the county or municipality in rezoning the property in exchange for such offer or exaction is the contracting away of the police power, which is forbidden. Art. XI, Sec. 3, Mo.Const.; *Kansas City Power and Light Co. v. Midland Realty Co.*, 338 Mo. 1141, 93 S.W.2d

---

**6.** It is not clear what distinction the court was drawing between zoning and subdivision cases. We doubt the court meant that in zoning the relationship could be unreasonable. Because there were no cases in Missouri involving zoning conditioned upon a particular performance the court may have been distinguishing zoning and subdivision control for that reason.

954 (1936) affirmed, *Midland Realty Co. v. Kansas City Power and Light Co.*, 300 U.S. 109, 57 S.Ct. 345, 81 L.Ed. 540, reh. den. 300 U.S. 687, 57 S.Ct. 504, 81 L.Ed. 888 (1937). Where, on the other hand, the development increases the needs of the county or municipality the cost of meeting those needs may reasonably be required of the developer. *Home Builders Association of Greater Kansas City v. City of Kansas City*, 555 S.W.2d 832 (Mo. banc 1977) [1–3].

 The burden of establishing unreasonableness is upon the plaintiffs. *Home Builders Association of Greater Kansas City v. Kansas City*, supra, [4, 5]. We are unable to conclude that they have carried the burden of establishing the absence of a reasonable relationship between the proposed activity of the developer and the improvements to Grant Road required by the ordinance. That Grant Road was in need of improvement before the development does not make it unreasonable to require an improvement made imperative by the development. We find no illegal contract zoning.

Paragraph 3 of the order of the trial court is ordered stricken; in all other respects the judgment is affirmed.

SATZ and SIMON, JJ., concur.