STATE of Missouri, ex rel Dorothy
TERRELL, and Helen
White, Relators,

v.

Honorable William M. NICHOLLS,
Circuit Judge, Twenty Second
Judicial Circuit, Respondent.

No. 51641.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 16, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 21, 1986.

Application to Transfer Denied
Dec. 16, 1986.

Robert C. Babione, St. Louis, for relators.

Mark E. Goodman, Clayton, for respondent.

KAROHL, Judge.

Relators are sisters with a property interest in real estate located at 3940–42 Olive Street in St. Louis, Missouri. They applied to this court for a writ of prohibition to prevent respondent Circuit Judge from proceeding on a petition of McPherson Redevelopment Corporation (McPherson) condemning their real estate as part of an urban redevelopment project. We granted a provisional writ to determine: (1) whether respondent judge had personal jurisdiction over relators; and, (2) whether McPherson had failed to comply with legal conditions precedent so as to deprive respondent of authority to order condemnation.

■ Relators claim defective service of process. A writ of prohibition will lie to review this claim. *State ex rel. Lesliy v. Aronson*, 362 S.W.2d 61 (Mo.App.1962). They also claim that McPherson, as condemnor, failed to comply with conditions precedent to the exercise of the condemnation power and that if condemnation is improperly granted an appeal would be an inadequate remedy because the condemnor would exercise it's rights of possession under § 523.055 RSMo 1978. A writ of prohibition was granted on this basis in *State ex rel. Weatherby Advertising Co. v. Conley*, 527 S.W.2d 334, 341–2 (Mo. banc 1975).

We find decisive relators claim that the Court was without authority to proceed in condemnation because McPherson had not satisfied conditions precedent to the exercise of the condemnation powers. Relators assigned two reasons for this view. Each reason relies upon the fact that the ordinance of the City of St. Louis granting the power of eminent domain to McPherson includes: (1) an agreement between McPherson and the City of St. Louis which incorporates a redevelopment plan submitted by McPherson; and, (2) Community Development Commission (C.D.C.) guidelines. The ordinance does include the provisions of the agreement and the guidelines. The issue is whether admitted failures to comply with one provision of the Plan [notice to property owners of execution of the development contract together with a copy of the plan] and one C.D.C. guideline [execution of agreement within ninety days of the date of ordinance] create a limitation on McPherson's power to condemn. Relators phrase the issue to be, "is McPherson's eminent domain power ineffective for failure of McPherson to carry out the redevelopment program authorized by the ordinance". McPherson contends that its right to acquire property by eminent domain is absolute and limited only by the jurisdictional prerequisite that it make an offer to the landowner provided the landowner can be located, and the parties are unable to reach agreement as to price. § 523.010, RSMo 1978; *State ex rel. Weatherby Advertising Co. v. Conley*, 527 S.W.2d 334 (Mo. banc 1975).

It is agreed that McPherson is an urban redevelopment corporation. § 353.030, RSMo 1978. Its right to exercise the power of eminent domain over relators' property is derived from § 353.130, RSMo 1978, Chapter 11.06 of the Revised City Code for the City of St. Louis[1] and City Ordinance No. 58764.

Chapter 11.06 describes redevelopment procedures for blighted areas. Under Chapter 11.06, the process of condemnation

---

1.  Hereafter, citations of Chapters and Sections are of this code unless otherwise noted.

for urban redevelopment begins with a proposed ordinance to declare an area blighted. Any redevelopment corporation may file a development plan with C.D.C. to develop the area to be blighted. The contents of the plan are specified in § 11.06.080. There are 22 requirements, none of which are pertinent to the right of property owners to participate in redevelopment or time limits on when the redevelopment agreement must be signed after a redevelopment ordinance is adopted. The function of the commission is to review the plan(s) and recommend to the Mayor and the Board of Aldermen. If a plan is introduced before the Board there may be a public hearing in a committee of the Board at the corporation's expense. The bill must be approved within six months or it is automatically denied. The Board may permit the redevelopment corporation to use the powers of eminent domain in the development. § 11.06.180 and § 11.06.220. Specific terms to be included in every ordinance approving a redevelopment plan are found in § 11.01.230. After enactment, the city and the developer shall enter into an agreement for the development in accord with Chapter 11.06 and the new ordinance. Where the C.D.C. guidelines are included in the plan and the plan is incorporated in the ordinance the signing of the agreement should be done within 90 days of enactment of the ordinance.

In order to implement the work of the C.D.C., as an advisory body to the Mayor and the Board of Aldermen, it adopted and published guidelines to be used by a redevelopment corporation in submitting a plan to redevelop a blighted area. One guideline required, "a draft copy of the contract which the developer proposes to enter into with the city" containing a provision that the contract "shall be executed within ninety days of the enactment of said ordinance".

McPherson's agreement, executed by it and the City on July 16, 1985, adopts the applicable provisions of Chapter 11.06 and the enabling Ordinance No. 58764. It also incorporates it's plan of March 22, 1982, which provides, inter alia, that

Upon execution of a contract between the Corporation and the City, and within ninety (90) days after the effective date of the ordinance approving this Development Plan, the Corporation *shall* mail to each record owner in the project area whose name and address appears in the public land records of the Recorder of Deeds of the City of St. Louis, a notice of the execution of the Development contract and a copy of the Development Plan. Such notice shall specifically advise such owner of his rights to file plans and to enter into contracts with the Corporation for the development or rehabilitation of his existing building or for new construction, and the time limits within which actions may be taken by the owner. It will further notify such owner of the address to which inquiries concerning plans and contract may be made. A copy of the notice together with certificate of the mailing shall be filed by the Corporation with the Clerk of the Board of Aldermen and with the President of the Board of Public Service. Failure of any owner *to receive* such notice shall not change or alter any such owner's rights, duties and obligations under the Plan, extend or delay the time within which owner has a right to take or perform any act, or give such owner any defense to any action of the Corporation. (emphasis ours)

The enabling ordinance, No. 58764, was approved February 22, 1983. It refers to McPherson's March 22, 1982, plan and C.D.C.'s report recommending approval. The ordinance requires that C.D.C.'s conditions be "[s]pecifically made a part of the ordinance and accompanying agreement". It grants the power of eminent domain to McPherson as developer. It recited the development agreement in full. Because the agreement incorporated the Plan the requirements of the Plan are part of the agreement. Because the ordinance makes the agreement a provision the terms of the plan becomes part of the ordinance. Accordingly, the ordinance required McPherson to (1) sign the agreement with the city within ninety days of enactment of the

ordinance, and (2) mail to property owners within ninety days after the effective date of the ordinance a notice of the execution of the development contract with the city and a copy of the development plan.

■ The plan as part of the ordinance requires McPherson to notify the property owners of the agreement and the terms of the plan. These provisions are a direct benefit to the property owners because the plan offers them a procedure to develop their own parcels at their own expense within the requirements of the plan and with the approval of McPherson. The plan describes McPherson as an "umbrella redeveloper" with the "role of coordinator and facilitator of redevelopment activities within the area". Failure to serve notice on property owners was a failure to follow the plan and therefore the ordinance. It denied the property owners, including relators, an opportunity which the ordinance granted. The ordinance required the mailing and a certificate of the mailing to be filed in two offices. The city granted McPherson the power of eminent domain to cure the blight in the affected area within the terms of the agreement. Specifically the Ordinance 58764 provides:

*SECTION THREE.* It is determined, found and declared that there exists a necessity for the granting of the power of eminent domain to the Develper [sic], that the granting of such power is in the public interest and serves the public purposes expressed in Chapter 11.06 of the Revised Code of the City of St. Louis, 1980, and that there is hereby granted to McPherson Redevelopment Corporation, a Certificate of Public Convenience and Necessity authorizing and empowering it to acquire by eminent domain or otherwise all or part of the real property located in the Development Area *for the purposes expressed in the Development Plan.* The Developer shall have the authority and powers of eminent domain as set forth in Section 353.130(3), Revised Statutes of Missouri, 1978. It is further determined, found and declared that the City of [on] request of McPherson Redevelopment Corporation shall acquire by eminent domain or otherwise all or part of the real property in the Development Area, pursuant to the provisions of Sections 11.06.180 through 11.06.220 of the Revised Code of the City of St. Louis, 1980. (emphasis ours)

■ The power of eminent domain in McPherson was not absolute. The power was no greater than that as authorized by ordinance. It was to complete the plan. McPherson answers that the parcel redevelopment provisions of the plan are not a limitation on its power of eminent domain because of other provisions in the plan:

Notwithstanding the procedure for execution of Parcel Development Agreements, the Corporation may acquire properties in the Area by eminent domain, as *provided in the Development Plan.*

. . . .

The Corporation shall have the right to acquire by eminent domain, any property within the Development Area in its sole and absolute discretion as provided and *within the limits provided in the Development Plan.* Before initiating condemnation, Corporation shall have made an offer to the owner for the property provided the owner can be located.

We disagree. These provisions express limits on McPherson's power. It may condemn only "within the limits provided in the development plan". The plan required the notice be sent to owners. McPherson argues that it is not obligated to enter into a parcel development agreement. If true, it contends the failure to notify owners can not be a limit on it's power to condemn. This ignores the provisions that it is obligated to *notify* property owners of the right to self improve within the plan, whether or not it enters into an agreement. It also ignores a provision of the plan, as incorporated in the ordinance, that "if the owner and the Corporation are unable to reach agreement on plans and contractural arrangements, the owner may appeal the decision to an Appellate Board". Further, "[a] person aggrieved by a decision of the

Appellate Board may appeal to a court of law." We conclude that McPherson was obligated to follow the plan and notify record owners of the plan and agreement; that under the plan this obligation was a condition precedent and restriction on the exercise of the power of eminent domain which was granted only for the purposes expressed in the development plan; that McPherson admitted it did not follow the plan and give the required notice. In *Maryland Plaza Redevelopment Corporation v. Greenberg*, 594 S.W.2d 284 (Mo. App.1979), we affirmed denial of condemnation where an ordinance authorizing eminent domain was defective for failure to require a detailed financial plan. We there said,

> The dint of eminent domain is mighty. It is in derogation of the common law and is traditionally reserved to the sovereign. (citation omitted) The exercise of its power must be in strict compliance with the strictures under which it is granted. (citation omitted) But to be balanced against this fine legal rubric is the fundamental precept to abjure any violation of Chapter 353 legislative intendment and the beneficial purposes of urban redevelopment.

594 S.W.2d at 292. McPherson did not strictly comply with the ordinance under which the power of eminent domain was granted. The ordinance provided rights and benefits and advantages to the property owners with rights of appeal under a program of parcel redevelopment. The plan was proposed by McPherson, accepted by the City and made a part of the ordinance. McPherson was granted the power "for the purposes provided in the Development Plan". Notice by McPherson and an opportunity to self develop by a property owner was one of the purposes. Notice was not incidental, it was required as a condition to exercise of the power. McPherson stipulates that it did not send notice. It is not authorized to condemn relator's property. On these facts respondent is without jurisdiction to order condemnation on the petition of McPherson. It is not necessary to consider the effect of failure to sign the redevelopment within 90 days but we observe that provision is to protect the city and not the property owners. We make our writ absolute. *State ex rel. Weatherby Advertising Co. v. Conley* 527 S.W.2d 334, 341–342 (Mo. banc 1975).

SNYDER, C.J., and CARL R. GAERTNER, J., concur.

**J.B.C., Plaintiff-Respondent,**