The **CITY OF ST. CHARLES**, Missouri, Plaintiff/Appellant,

v.

**DeVAULT MANAGEMENT**, et al., Defendants/Respondents.

No. 70806.

Missouri Court of Appeals, Eastern District, Division Four.

Oct. 28, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 8, 1998.

Application for Transfer Denied Feb. 24, 1998.

---

V. Scott Williams, Matthew J. Fairless, Rollin J. Moerschel, Thompson Coburn, St. Charles, for Appellant.

Irving L. "Buddy" Cooper, Michael P. Steeno, Miller and Steeno, Michael A. Gross, Cynthia A. Sciuto, St. Louis, for Respondent.

SIMON, Judge.

The City of St. Charles (City) appeals a judgment of the Circuit Court of St. Charles County denying condemnation of apartment buildings in favor of defendants, DeVault Management (DeVault LLC), a limited liability company; DeVault Management (DeVault GC), a general partnership; Gregory Zes and James Zes, individually and as general partners of DeVault GC; and various other individuals and entities.

On appeal, City contends that the trial court erred when it: (1) incorrectly applied a burden of proof in reviewing City's compliance with the Tax Increment Financing Act (TIF Act), specifically Section 99.810(2) RSMo 1994 (all further references shall be to RSMo 1994 unless otherwise noted); (2) erroneously defined "comprehensive plan" and "conformity" from Missouri statutory provisions; and (3) improperly held City failed to prove its right to an order of condemnation because City presented substantial and unrebutted evidence of all elements required for an order of condemnation and defendants failed to present sufficient evidence to rebut the presumption of legitimacy of City's actions. We affirm.

Reviewing a court-tried case, we will sustain the trial court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The record reveals that James Zes and Gregory Zes (Zeses), brothers, purchased and managed apartment buildings through partnerships and limited liability companies including DeVault GP and DeVault LLC. In November 1992, DeVault GP purchased the Crestview Apartments (Apartments) from the Resolution Trust Corporation. In late 1994 or early 1995, DeVault LLC acquired Apartments, which currently contain 339 living units, 23 of which are townhouses and the remainder of which are one and two bedroom apartments. Renovation of Apartments began after the purchase.

On May 4, 1993, The City Council of St. Charles (City Council) passed Ordinance No. 93–90, in which it found the existence of one or more blighted areas within City and established a Tax Increment Financing Commission (TIF Commission) to propose redevelopment of certain areas, pursuant to Sections 99.800, et seq.,"Real Property Tax Increment Allocation Redevelopment." Section 99.810 provides, in pertinent part:

Each redevelopment plan shall set forth in writing a general description of the program to be undertaken to accomplish the objectives and shall include, but need not be limited to, estimated redevelopment project costs, the anticipated sources of funds to pay the costs, evidence of the commitments to finance the project costs, the anticipated type and term of the sources of funds to pay costs, the anticipated type and terms of the obligations to be issued, the most recent equalized assessed valuation of the property within the redevelopment area which is to be subjected to payments in lieu of taxes and economic activity taxes pursuant to section 99.845, an estimate as to the equalized assessed valuation after redevelopment, and the general land uses to apply in the redevelopment area. No redevelopment plan shall be adopted by a municipality without findings that:

(1) The redevelopment project area on the whole is a blighted area, a conservation area, or an economic development area, and has not been subject to growth and development through investment by private enterprise and would not reasonably be anticipated to be developed without the adoption of the redevelopment plan.

(2) The redevelopment plan conforms to the comprehensive plan for the development of the municipality as a whole.

* * *

Subsequently, TIF Commission identified a Redevelopment Area (Area) and prepared a redevelopment plan (Redevelopment Plan) and blighting study. Area consisted of approximately 106 acres in the City of St. Charles, bordered generally by Interstate 70 on the South, Fifth Street on the West, Boonslick Road on the North, and South Main Street on the East. Apartments occupied 11 acres within the Area.

On June 8, 1993, City Council passed Ordinance 93–127, which rezoned most of Area "to Zoning District RF (Riverfront District) from Zoning Districts RM (Multiple Family Residential district), LC (Limited Commercial District), C1 (Neighborhood business District), C2 (General Business district), C3 (Commercial District), M1 (Limited Industrial District) and M2 (General Industrial District) ..." Permitted land uses within the Riverfront District included public, semi-public and private commercial; parks; restaurants; retail; public meeting places and convention centers; floating casinos; multi-family residential; and other residential uses.

On December 21, 1993, City Council passed Ordinance 93–307, which made findings related to blight and adopted and incorporated the Redevelopment Plan, listing several blighting factors, including: a decline in real property values; the impact on public safety; the deterioration of site improvements; the conditions of the streets and street layout within the Area; and zoning conditions within Area and made findings relating to City's comprehensive plan and the Redevelopment Plan. In pertinent part, the Redevelopment Plan provided:

The City's Comprehensive Plan for the City dates from 1973 and has had no major update since that time. In general terms, this Redevelopment Plan and the General Land Use Plan contained herein is in conformance with the Comprehensive Plan.

* * *

The only significant divergence between the two land use plans concerns the area along South Main and the Crestview apart-ment complex property. The Comprehensive Plan, Land Use Plan Map suggests the retention of this area in residential land uses. The General Land Use Plan designates these areas for limited commercial development.

* * *

[I]t is the finding that the implementation of the Redevelopment Plan and redevelopment projects as conceived herein will be in general conformance with the Comprehensive Plan and in addition, will serve to enhance and enforce the implementation of the Riverfront District zoning provisions.

The comprehensive plan referred to in the Redevelopment Plan is the "City of St. Charles Comprehensive Plan" (1974 Comprehensive Plan), which was adopted by City Council in 1974.

On August 23, 1994, City Council passed Ordinance 94–214 authorizing City to enter into an agreement with Riverfront Station, Inc., to acquire the land located in Area for development. On September 22, 1994, City and Riverfront Station, Inc. executed an agreement designating Riverfront Station, Inc. as City's agent to acquire property through eminent domain.

On March 16, 1995, Riverfront Station, Inc. sent a letter to "DeVault Management, A Missouri General Partnership" offering to purchase Apartments for $3,300,000. Subsequently, the offer was rejected.

On June 20, 1995, City filed a Petition in Eminent Domain against DeVault GP, the Zeses as individuals and as general partners of DeVault GP and various other individuals and entities.

On July 21, 1995, Gregory Zes filed a Motion To Dismiss and Motion To Make More Definite and Certain, alleging City failed to: plead sufficient facts for eminent domain; inform him of all relevant hearings; adopt proper ordinances; and a defective summons was issued. Zes also contended lack of subject matter and personal jurisdiction and failure to state a claim for relief. DeVault LLC filed a Motion To Intervene contending that the Zeses conveyed Apartments to DeVault LLC by quitclaim deed on

or about January 1, 1995, which was subsequently recorded in the Recorder of Deeds office of St. Charles County, Missouri. DeVault LLC argued it should be joined as a party to the proceedings based on its actual possession and ownership of the subject property.

On August 4, 1995, the trial court granted DeVault LLC's Motion To Intervene and granted in part Gregory Zes's Motion To Make More Definite and Certain. Subsequently, City amended its petition.

On or about February 15, 1996, Gregory Zes and DeVault LLC filed a First Amended Motion to Dismiss essentially alleging what was contained in Gregory Zes' Motion to Dismiss. Also, Gregory Zes and DeVault LLC filed "Answer ... To Plaintiff's Petition And The Amendment To Paragraph 5 Of Plaintiff's Petition" essentially admitting ownership of the subject property, denying other allegations and renewing its allegations as to jurisdiction and failure to state a claim for relief. On or about March 31, 1996, the Zeses, DeVault LLC and other defendants filed a Motion For Judgment On The Pleadings, which was denied.

At trial, City called Linda Medlock, City Clerk, who testified she is Custodian of Records for City and during her testimony, the following were offered and received into evidence: Ordinances 93–90, 93–307, and 94–214; a City boundary map; an offer letter from Riverfront Station, Inc.; and records of two City Council meetings. After her testimony, City stated "that would conclude the evidence of the City of St. Charles reflecting its prima facie case."

In response, defendants called the following individuals to testify: Robert Moeller, current Mayor of City, as to current City plans and actions related to the Redevelopment Plan; Todd Powelson, Director of Market Research for St. Charles County, as to assessed property values within Area; Grace Nichols, Mayor of City from 1987–1995, as to City's plans and actions related to the Redevelopment Plan; and the Zeses, as to the ownership of Apartments and improvements made on them. Additionally, Richard Ward, a consultant in land use and urban development, testified that the Redevelopment Plan did not conform to the 1974 Comprehensive Plan, noting two principal differences: (1) the 1974 Comprehensive Plan intended certain riverfront property to be "basically park space" but the Redevelopment Plan now designates such property for "gaming operations and all the support facilities attendant to the gaming operation"; and (2) the 1974 Comprehensive Plan intended Apartment's property to be "moderate density residential up to fifteen dwelling units per acre" but the Redevelopment Plan now designates such property as "a major dense mix use development consisting of convention center, hotel, office building and related parking and retail development." Ward and Martin Basky, an urban planner, also testified regarding deficiencies in city's finding of blight within Area. During defendant's response, plaintiff offered two exhibits without objection: a county assessment of Apartments and a letter from Gregory Zes to the TIF Commission. Defendants offered without objection: (1) a St. Charles County report of assessed property values within the Area; (2) a certified copy of the 1974 Comprehensive Plan; (3) an analysis of assessed property values within Area; and (4) "Preliminary Report Comprehensive Plan—Part I." Further, defendants offered a number of photographs of Apartments, which were received into evidence.

In rebuttal, John Brancaglione, vice-president of an urban consulting firm and preparer of the Redevelopment Plan, testified that: (1) a comprehensive plan was a guideline document, purposely flexible, and is supposed to evolve; (2) the general land use plan element of a comprehensive plan should be updated annually; and (3) the overall comprehensive plan is normally reviewed on a five or ten year basis. On cross-examination, Brancaglione testified that the Redevelopment Plan does not conform to "the document, the 1974 Comprehensive Plan" regarding certain riverfront property and Apartments' property. City also recalled City Clerk, who presented certified copies of: Ordinance 93–127; a 1993 City zoning map; and Section 156.033 of City's Zoning Code, all of which were offered and received into evidence. City re-

called Brancaglione, who testified that his conclusions in the Redevelopment Plan that it conformed to the 1974 Comprehensive Plan were based upon his belief that the scope and magnitude of City's 1993 rezoning, Ordinance 93–127, constituted an amendment to the 1974 Comprehensive Plan. After Brancaglione's testimony, City stated "that concludes the evidence for the plaintiff on rebuttal."

Parties submitted proposed findings of fact and conclusions of law. On April 2, 1996, the trial court entered judgment in favor of all defendants, finding, in pertinent part, that: (1) DeVault LLC not DeVault GC was the owner of Apartments at the time of the filing of the lawsuit and at trial; (2) City had adopted the 1974 Comprehensive Plan and on December 22, 1993, adopted the Redevelopment Plan pursuant to the TIF Act for the redevelopment of certain areas of land, which included Apartments; and (3) "the Redevelopment Plan calls for the area east of South Main to be developed as support facilities and a park, and the Crestview Apartments to be developed as a convention/hotel/entertainment area. Yet, in the Comprehensive Plan ... the area east of South Main was to be retained as park land, and the Crestview Apartments was to be developed as moderate density residential."

In its Conclusions of Law, the trial court, in pertinent part, found (citations omitted):

1. The power of condemnation is limited to takings for the public use. As such, statutes granting the power to take private property for public use are strictly construed against the condemnor.

2. The City's cause of action is instituted under the TIF Act.

3. It is axiomatic that the burden of proof always remains on the party who has the affirmative of the issue ... That burden is met when the plaintiff has introduced sufficient evidence to establish a prima facie case.

4. The burden of proving that it has complied with the TIF Act, rests on the City.

5. The Redevelopment Plan was introduced into evidence through the City's Exhibit 3. This Exhibit is an ordinance of the City which, amongst other things, adopted the Redevelopment Plan. The ordinance also found that the Redevelopment Plan conformed to the Comprehensive Plan (Defendant's Exhibit B) for the development of the City of the St. Charles as a whole.

6. The City has failed to carry its burden of proof in that it has failed to prove that the Redevelopment Plan "conforms to the comprehensive plan for the development of the municipality as [a] whole." Section 99.810(2). The City's own evidence disclosed that the Redevelopment Plan did not fully conform to such Comprehensive Plan in that, whereas the Comprehensive Plan calls for the area along South Main Street and the area comprising the Crestview Apartments to be retained for resident land uses, the Redevelopment Plan designates those areas for limited commercial development (Page 48 of the Redevelopment Plan). The legislature, in enacting Section 99.810(2) did not authorize substantial conformance (emphasis added), but rather required simply that there be conformance between the Redevelopment Plan and the Comprehensive Plan ... The intent of the legislature was to require full conformance, not substantial conformance.

7. Condemnation is a two-step process: First, the Court must determine whether the condemnation is authorized by law, that is, is there jurisdiction over the condemnation proceeding; and second, then assuming the Court finds that it has jurisdiction over the condemnation proceeding, the Court must establish the property owners' damage from the taking. At the first stage, the landowner (in this case, the LLC) has the burden of alleging and proving that the City's claim of necessity for the taking constitutes "fraud, bad faith or an arbitrary and unwarranted abuse of discretion." And so, the burden is on the LLC to prove such fraud, bad faith or an arbitrary and unwarranted abuse of discretion on the part of the City. The City's determination that the Redevelopment Plan conforms to the comprehensive plan was arbitrary, contrary to fact and an unwarranted abuse of discretion.

This determination is dispository, making all other issues moot. As to such other issues, the Court specifically makes no further determination.

Accordingly judgment is entered as follows:

### JUDGMENT

Judgment is therefore entered in favor of all of the defendants and against plaintiff. Court costs are taxed against Plaintiff.

Subsequent to the trial court's judgment, City filed a timely appeal.

In its first point, City contends that the trial court erred because it applied an incorrect burden of proof in reviewing City's compliance with Sections 99.800, et seq. City relies on the trial court's statement in its conclusions of law that "the burden of proving that it has complied with the TIF Act rests on the City" for its contention that the trial court improperly continued to allocate the burden of proving compliance with the TIF Act to City after it presented a prima facie case of compliance. City contends that it should have been afforded a presumption that the ordinance in question was validly enacted, that is, in compliance with the applicable statutes and the constitution.

■ It is well-settled that in a condemnation action, the court must initially determine whether the condemnation is authorized by law i.e.: is there jurisdiction over the condemnation proceeding. *State ex rel. Devanssay v. McGuire*, 622 S.W.2d 323, 325 (Mo.App.1981). This determination may involve one or more of several requirements: is there constitutional, statutory or ordinance authority for the exercise of eminent domain; is the taking for a public use; has the condemning authority complied with the conditions precedent to bringing the action. *Id.* Next, the court must establish the landowner's damages from the taking. *Id.* At that stage, commissioners are appointed to assess the landowner's damages and upon payment of the commissioners' award the condemning authority acquires the property and may proceed to utilize it as prayed in its petition for condemnation. *Id.*

■ At the initial hearing, the landowner has the burden of alleging and proving that the city's claim of necessity for the taking constitutes "fraud, bad faith or an arbitrary and unwarranted abuse of discretion." *State ex rel. Missouri Highway and Transp. Com'n v. Bush*, 911 S.W.2d 690, 692 (Mo.App.1995). The issue of whether a legislative determination is arbitrary rests on the facts of each case. *Crestwood Commons Redevelopment Corp. v. 66 Drive–In*, 812 S.W.2d 903, 910 (Mo.App.1991). Unless it appears that the conclusion of the municipal organization is clearly arbitrary, a court cannot substitute its opinion. *Id.* If the questioned action is reasonably doubtful or even fairly debatable, a court cannot substitute its opinion. *Id.*

■ City essentially argues that it made a prima facie case, and its ordinances are entitled to a presumption of validity, therefore, the trial court erred in continuing to place the burden of proving compliance with the TIF Act on City. City apparently confuses burden of proof with the burden of going forward with the evidence. Establishing a prima facie case merely shifts the burden of going forward with the evidence to the other party, but, in the absence of a statutory provision to the contrary, does not shift the burden of proof. *Dehner v. City of St. Louis*, 688 S.W.2d 15, 18 (Mo.App.1985). As the trial court correctly noted, City retained the burden of proof and failed to prove that Ordinance 93–307 was in conformity with the requirement "the redevelopment plan conforms to the comprehensive plan for the development of the municipality as a whole." Section 99.810(2).

■ City called City Clerk to testify that she is custodian of records and during her testimony, it offered exhibits into evidence including Ordinance 93–307, in which City Council adopted the Redevelopment Plan. The record indicates that City made a prima facie case. Legislative enactments have a presumption of validity, but this is a rebuttable presumption. *Parking Systems, Inc. v. Kansas City Downtown Redevelopment Corp.*, 518 S.W.2d 11, 16 (Mo.1974). After City presented its prima facie case, the

burden of going forward with evidence shifted to defendants, and defendants offered exhibits including the 1974 Comprehensive Plan and called witnesses who testified about City's actions and a lack of conformity between the 1974 Comprehensive Plan and the Redevelopment Plan. Following defendants' evidence, City called City Clerk again and Brancaglione to testify. Exhibits were offered including Ordinance 93–127, which amended City's zoning. The trial court found that "City has failed to carry its burden of proof in that it has failed to prove that the Redevelopment Plan 'conforms to the comprehensive plan for the development of the municipality as a whole' ... City's determination that the Redevelopment Plan conforms to the comprehensive plan was arbitrary, contrary to fact and an unwarranted abuse of discretion." Thus, City's failure to conform the Redevelopment Plan to the 1974 Comprehensive Plan established that the condemnation was not in compliance with the law. The lack of conformity is not reasonably doubtful or even fairly debatable. The trial court's findings of fact and conclusions of law are supported by substantial evidence and constitute a correct application of the law. City's point is not meritorious.

In its second point which contains two subpoints, City contends that the trial court erred in its determination that the redevelopment plan did not conform to the 1974 Comprehensive Plan.

In its first subpoint, City contends that "comprehensive plan" in Section 99.810(2) includes the general zoning ordinances in effect at the time of the approval of the Redevelopment Plan and that Chapter 89, "Zoning and Planning," pursuant to which the 1974 Comprehensive Plan was adopted, provides by its plain language that future zoning changes can and should be used to implement and modify the 1974 Comprehensive Plan.

■■■ Our review of Chapter 89 and 99 indicates that there is no statutory definition for "comprehensive plan." The purpose of a comprehensive plan is to guide the development and use of land within the city. *State ex rel. Westside Development v. Weatherby Lake*, 935 S.W.2d 634, 640 (Mo.App.1996). It need not constitute a single document. *Id.*

Where no comprehensive plan exists, whether the requirement of creating a general plan to control and direct the use and development of property within the community has been satisfied must be determined on a case-by-case basis. *Id.*

■■■ City argues that the plain language of Sections 89.300 through 89.490 contemplate that future zoning changes can and should be used to implement and modify the 1974 Comprehensive Plan, specifically citing Sections 89.310 and 89.340. City also argues that Section 89.040 provides that zoning is part of a municipality's comprehensive plan.

Section 89.040, in pertinent part, provides:

Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets ...

Section 89.310 provides:

Any municipality in this state may make, adopt, amend, and carry out a city plan and appoint a planning commission with the powers and duties herein set forth.

Section 89.340, in pertinent part, provides:

The commission shall make and adopt a city plan for the physical development of the municipality. The city plan with the accompanying maps, plats, charts and descriptive and explanatory matter, shall show the commission's recommendations for the physical development and uses of land ... the adoption, enforcement and administration of the zoning plan shall conform to the provisions of sections 89.010 to 89.250.

Section 89.360, in pertinent part, provides:

The commission may adopt the plan as a whole by a single resolution, or, as the work of making the whole city plan progresses, may from time to time adopt a part or parts thereof, any part to correspond generally with one or more of the functional subdivisions of the subject matter of the plan. Before the adoption, amendment or extension of the plan or portion thereof the commission shall hold at least one public hearing thereon ... The adoption of the plan requires a majority vote of the full membership of the planning commission. The resolution shall refer expressly to the

maps, descriptive matter and other matters intended by the commission to form the whole or part of the plan and the action taken shall be recorded on the adopted plan or part thereof.. and a copy of the plan or part thereof shall be certified to the council and the municipal clerk, and a copy shall be available at the municipal clerk's office for public inspection during normal business hours.

These sections provide that a municipality may amend its comprehensive plan, but as noted earlier, the record indicates that the 1974 Comprehensive Plan was not revised prior to the adoption of the Redevelopment Plan, and these sections do not provide that zoning ordinances amend or become part of a previously-adopted comprehensive plan.

City further contends that the 1993 rezoning modified and became part of the 1974 Comprehensive Plan, principally relying on *Strandberg v. Kansas City*, 415 S.W.2d 737 (Mo.1967) and *Treme v. St. Louis*, 609 S.W.2d 706 (Mo.App.1980). *Strandberg* involved a city's appeal of a trial court's order declaring its rezoning ordinance invalid. Landowners contesting the rezoning argued that the rezoning conflicted with their characterization of a comprehensive plan, a document called "Master Plan for Kansas City," which was prepared by the City Plan Commission for its own use and never enacted by the city council. *Id.* at 744. The trial court found that the comprehensive plan was "the general zoning ordinance, if any, which is in effect at any particular time." *Strandberg*, 415 S.W.2d at 744. Our Supreme Court, agreeing, affirmed the judgment, finding:

In a narrower sense there is a comprehensive plan for each of the districts in that the regulations and restrictions must be uniform for each class or kind of buildings throughout for each of the districts in that the regulations and restrictions must be uniform for each class or kind of buildings throughout each district. In a larger sense the term *may* properly be applied to the general zoning ordinance in effect at a particular time including all valid amendments thereto. *Id.*

*Strandberg* is factually-distinguishable in that there was no duly-adopted comprehensive plan for Kansas City as in the present case. While *Strandberg* does hold that general zoning ordinances may constitute a comprehensive plan, it is not authority for the position that zoning ordinances modify or become part of a previously-adopted comprehensive plan.

City also argues that in *Treme* we held that written comprehensive plans are general guidelines to zoning that are flexible and are not intended to control zoning decisions on specific parcels of land. *Treme* involved adjacent landowners to a rezoned tract of land who appealed the trial court's ruling upholding the rezoning. One of the landowners' arguments was that the rezoning ordinance was not in accordance with the "General Plan for St. Louis County." *Treme*, 609 S.W.2d at 715. Affirming, we stated:

We will presume that the General Plan is the development plan authorized by the Charter and that it serves as a comprehensive plan for purpose of zoning. In approving the general Plan the Council specifically referred to the Plan as a "flexible guideline" and further stated "but no failure to explicitly modify the General Plan shall operate to deny or prejudice any person seeking rezoning or other development permission." We, therefore, must conclude that the Plan is a general guideline to zoning within the County, but that it is "flexible" and is not intended to control zoning decisions on specific parcels of land. *Id.*

Here, the 1974 Comprehensive Plan does not contain similar language but provides "... to remain up-to-date, the plan shall be reviewed annually by the Planning Department and the Commission, and revisions made where appropriate." City's subpoint is not meritorious.

In its second subpoint, City contends that if we find that the 1974 planning document is City's comprehensive plan, the finding of non-conformance is erroneous and unsupported by the evidence in that defendants failed to prove a "disabling disharmony" between 1974 planning document and the Redevelopment Plan.

City argues that *Tierney v. Planned Industrial Expansion*, 742 S.W.2d 146 (Mo. banc 1987) directs the trial court to apply a standard of "substantial compliance" or "disabling disharmony" under Section 99.810. *Tierney* involved an appeal by property owners of trial court's order upholding condemnation proceedings under the Planned Industrial Expansion Act (PIE Act) where the property owners contended that the city's redevelopment plan under the PIE Act did not conform to its Downtown Industrial Area Plan of 1978 because the Downtown Industrial Area Plan recommended a land use of "light industrial" and the redevelopment plan made provisions for "commercial" zoning. *Id.* at 152. Cause was transferred following the issuance of a ruling in prohibition by our colleagues in the Western District Court, which concluded that Planned Industrial Expansion Authority of Kansas City had not complied with certain mandatory requirements of Chapter 100. In pertinent part, Section 100.400.1(9) provides:

> The governing body may approve a plan if it finds that the plan is feasible and in conformity with the general plan for the development of the community as a whole. A plan which has not been approved by the governing body when recommended by the authority may be recommended again to it with any modifications deemed advisable.

On transfer, our Supreme Court noted that Section 100.610, which provides "This law shall be construed liberally to effectuate the purposes hereof ..." commanded it to construe the act "liberally to effectuate the purposes of the law." *Tierney*, 742 S.W.2d at 149. Further, it found that there was no "disabling disharmony" between the two plans and stated:

> The City Plan Commission and the City Council are charged with the responsibility for comparing the PIEA proposal to the preexisting plans and determining whether there is substantial compliance. To the extent that there are differences, we must assume that the duly constituted authorities concluded that the preexisting plans should be modified. The owners would introduce inflexibility and invite close judi-

cial scrutiny, in a way not contemplated by the governing legislation. *Id.* at 152–153.

Here, Chapter 99 does not contain a similar provision, and we are mandated to strictly construe statutes delegating the right of eminent domain. *State ex rel. Missouri Cities Water Co. v. Hodge*, 878 S.W.2d 819, 821 (Mo.banc 1994). "Conforms" is not defined in Chapter 99. In determining legislative intent, statutory words and phrases are taken in their ordinary and usual sense. *Abrams v. Ohio Pacific Exp.*, 819 S.W.2d 338, 340 (Mo.banc 1991); Section 1.090. That meaning is generally derived from the dictionary in the absence of a definition *Id.* Webster's Third New International Dictionary 477 (1981) defines "conform" as: "to be in agreement or harmony." Under Section 99.810(2), the plain meaning of "conforms" would be that the redevelopment plan present findings that are in "agreement or harmony" with the comprehensive plan "as a whole." Since Section 99.810 is not ambiguous, we are afforded no room for construction and cannot disregard the plain meaning of "conforms." City's second subpoint is not meritorious.

In its third point, City contends that the trial court erroneously held it failed to prove its right to an order of condemnation because it presented substantial and unrebutted evidence of all elements required for an order of condemnation, and defendants failed to present sufficient, substantial evidence to rebut the presumption of legitimacy of City's actions.

Since we have previously found that the trial court's findings and conclusions were not erroneous, we need not address this point.

JUDGMENT AFFIRMED.

ROBERT G. DOWD, Jr., P.J., and HOFF, J., concur.