**CITY CENTER REDEVELOPMENT CORPORATION, Appellant,**

v.

**FOXLAND, INC., and Ronald A. Leggett, Respondents.**

**No. ED 85709.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 15, 2005.

Alan D. Pratzel, St. Louis, MO, for appellant.

Michael W. O'Reilly, St. Louis, MO, for respondent.

## OPINION

GEORGE W. DRAPER III, Judge.

City Center Redevelopment Corporation (hereinafter, "CCRC") filed a petition in condemnation seeking to acquire a parcel of property owned by Foxland, Inc. (hereinafter, "Foxland"). Foxland filed a motion to dismiss, or in the alternative, a motion for summary judgment. The trial court granted Foxland's motion. CCRC appeals from the trial court's judgment. We affirm.

In 1974, the City of Saint Louis adopted an ordinance finding the Grand Center District was blighted pursuant to Chapter 353, Urban Redevelopment Corporations Law. CCRC submitted a development plan to redevelop a portion of this blighted area in 1981. In March 1981, the Board of Aldermen of the City of Saint Louis

adopted Ordinance 58270 (hereinafter, "the 1981 Ordinance"), approving CCRC's development plan. Further, in May 1981, the City of Saint Louis entered into an agreement with CCRC, granting CCRC certain rights within the development area, including the power of eminent domain over property which could not be acquired through good faith negotiations. This power of eminent domain expires in 2006.

Within the blighted area encompassed by CCRC's development plan is the Fox Theater. The Fox Theater is sited on two parcels of property. One parcel of the property is owned by Foxland which includes the Fox Theater's lobby and seating; the other parcel is owned by Fox Associates, L.L.C. (hereinafter, "Associates") which includes the stage and the backstage of the Fox Theater. The Fox Theater was rehabilitated and renovated in 1981. It reopened in 1982 as a major entertainment venue. Associates currently has a 99 year lease on the parcel of land owned by Foxland which will expire in January 2025.

CCRC submitted an amended and restated development plan dated December 2, 1983. This plan acknowledged the Fox Theater development was completed.

In 1984, the City of Saint Louis adopted Ordinance 59045 (hereinafter, "the 1984 Ordinance"), amending provisions of the 1981 Ordinance. The 1984 Ordinance enacted and modified the 1981 Ordinance "to enable [CCRC] to better proceed with the redevelopment program that has already begun...."

Grand Center, Inc., a wholly owned subsidiary of CCRC, and Associates entered into a land swap agreement in 1998. Part of this agreement states, "Upon the request of Associates, [Grand Center, Inc.] will cooperate with and assist Associates in acquiring fee title to the land under the Fox Theatre that is currently under ground lease and not owned by Associates, including, without limitation, the institution of condemnation proceedings by CCRC and/or the consent or approval, as necessary, of CCRC to condemnation by another entity (public or private) on Associates' behalf...."

Associates requested CCRC to acquire Foxland's interest for it prior to the expiration of CCRC's power of eminent domain in 2006. On August 20, 2003, CCRC's board of directors adopted a resolution, declaring the acquisition of the property underlying the Fox Theater was necessary to carry out its development plan. It also resolved that the property should be acquired by eminent domain if CCRC was unable to acquire it otherwise. However, the president of CCRC,[1] (hereinafter, "the president") stated in his deposition testimony CCRC was "not seeking to acquire [Foxland's fee simple interest] for construction or any kind of development."

CCRC offered Foxland $350,000 for its fee interest; Foxland rejected this offer. On January 23, 2004, CCRC filed a petition in condemnation to acquire the property underlying the Fox Theater that is owned by Foxland. CCRC claimed the continued successful development and operation of the Grand Center District depended upon the merger of the property interests underlying the Fox Theater.

Foxland filed a motion to dismiss, or in the alternative, a motion for summary judgment. After considering the materials submitted and oral argument, the trial court granted Foxland's motion to dismiss. This appeal follows.

CCRC raises one point on appeal. CCRC claims the trial court erred in dismissing its petition in condemnation with

---

1. The current president of CCRC is Vincent C. Schoemehl, Jr.

prejudice because the dismissal constituted an abuse of discretion. CCRC asserts that while the relevant notice provision of the 1984 Ordinance was not met, it was curable. CCRC believes the trial court's dismissal with prejudice deprived it of its authority to combine parcels into a single development.

This appeal is from the judgment of the trial court on a motion to dismiss or, in the alternative, a motion for summary judgment. Both parties stipulated that matters outside the pleadings were presented to the trial court for its consideration. Since "matters outside the pleadings are presented to [the trial court] and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 74.04 . . . ." Rule 55.27(b).

In review of summary judgment, we review the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Finance v. Mid–America Marine,* 854 S.W.2d 371, 376 (Mo. banc 1993). We accord the party against whom summary judgment was entered the benefit of every doubt. *Green v. Washington University Medical Center,* 761 S.W.2d 688, 689 (Mo.App. E.D.1988). Summary judgment is intended to move the parties beyond the petition's allegations and determine if a material fact for trial exists. *Martin v. City of Washington,* 848 S.W.2d 487, 491 (Mo. banc 1993). Appellate review of the grant of summary judgment is purely a question of law and, hence, employs the same criteria as imposed by the trial court in its initial determination of the propriety of the motion. *ITT Commercial Finance,* 854 S.W.2d at 376.

Summary judgment will be granted as a matter of law to the moving party when there is no genuine issue as to any material fact. Rule 74.04(c)(3). The moving party bears the burden of establishing a right to judgment as a matter of law. Following the moving party's prima facie showing, summary judgment will be granted if the responding party fails to reply with specific facts showing a genuine issue of material fact exists for trial or with a demonstration that judgment as a matter of law is incorrect. Rule 74.04(e). A party may not avoid summary judgment by introducing inconsistent testimony in order to create a genuine issue of material fact. *Kellog v. Kellog,* 989 S.W.2d 681, 687 (Mo.App. E.D. 1999).

In a condemnation action, the court initially must determine whether the condemnation is authorized by law. *City of Wentzville v. Dodson,* 133 S.W.3d 543, 548 (Mo.App. E.D.2004). "This determination may involve one or more of several requirements: is there constitutional, statutory or ordinance authority for the exercise of eminent domain; is the taking for a public use; has the condemning authority complied with the conditions precedent to bringing the action." *City of St. Charles v. DeVault Management,* 959 S.W.2d 815, 821 (Mo.App. E.D.1997). Then, the court determines the landowner's damages from the taking. *Id.*

While recognizing CCRC has been granted the right to exercise the power of eminent domain, this power is limited to CCRC's grant of authority from the City of Saint Louis. *State ex rel. Terrell v. Nicholls,* 719 S.W.2d 862, 865 (Mo.App. E.D.1986). CCRC believes the 1984 Ordinance gives it the authority to bypass the notice requirements and Parcel Development Agreement provisions in certain instances. CCRC states it has the power to undertake eminent domain proceedings against Foxland to combine the individual properties in to a single development pursuant to Section 6(*o*). Section 6(*o*) provides:

Nothwithstanding anything set forth in this paragraph 6 or in the Plan, the Developer may determine that it is not appropriate for an owner to rehabilitate his property or undertake new construction on his property in those instance where it is necessary either (i) to provide parking, pedestrian or vehicular access, or open space . . . or (ii) to combine individual properties into a single development. If the Developer makes such a determination, the Developer shall not be required to follow the procedures for notices and Parcel Development Agreements set forth in this paragraph 6. *However, notice of such determination, as described in this paragraph, shall be provided by the Developer to the Community Development Commission, the City Alderman in whose ward the affected property lies and the affected property owner not less than sixty (60) days in advance of the decision as described in this paragraph. A copy of the notice together with certification of the mailing shall be filed by the Developer with the Clerk of the Board of Alderman and the President of the Board of Public Service. Upon compliance with the procedures set forth in this paragraph the Developer may proceed to acquire such property by negotiation or eminent domain.*

(emphasis in the original).

The provisions in the 1984 Ordinance expressly limit CCRC's power. There are general notice requirements pursuant to Section 6, but there are specific notice requirements when CCRC acts pursuant to Section 6(*o*). CCRC admits that it did not follow the specific requirements set forth by this provision. CCRC did not send Foxland the 60 day notice provided for in the 1984 Ordinance at any time prior to initiating condemnation proceedings.

CCRC did not strictly comply with the 1984 Ordinance under which the power of eminent domain was granted. This ordinance granted property owners the opportunity of notice, in part, to effectuate the purpose of the entire section, encouraging owners to rehabilitate their own properties. "Notice was not incidental, it was required as a condition to exercise the power." *Terrell,* 719 S.W.2d at 866. Accordingly, CCRC was not authorized to condemn Foxland's interest because it failed to provide the required notice. Furthermore, CCRC had no authority to proceed under Section 6(*o*) because the rehabilitation of the Fox Theater was complete prior to 1984. The trial court's judgment did not deprive CCRC of a right to condemn one half of a property.

While we find CCRC's failure to strictly follow the guidelines set forth in the 1984 Ordinance forecloses its ability to exercise the power of eminent domain, we also note its attempt to condemn Foxland's interest is specious. CCRC attempted to assert its power of eminent domain granted under a section of the ordinance which is meant to encourage owners to rehabilitate their own property. More specifically, CCRC invokes its power granted under Section 6(*o*) which was a part of the amended 1984 Ordinance.

CCRC admitted prior to the enactment of the 1984 Ordinance that the Fox Theater is rehabilitated.[2] Further, CCRC admitted it has no plans to develop the property beyond its current state. These facts and the president's statement demonstrate that CCRC instigated this condemnation proceeding in August 2003, based only upon demands made by Associates. We fail to perceive any good faith purposes or intent to rehabilitate pursuant to either Ordinance.

2. This was admitted in the president's deposi-    tion and in the 1984 Ordinance.

The judgment of the trial court is affirmed.

GARY M. GAERTNER, SR., P.J. and KENNETH M. ROMINES, J., concur.